HORTON SPITZER *v.* HAIMS AND COMPANY ET AL.
(13857)

SHEA, GLASS, HULL, BORDEN and F. X. HENNESSY, Js.

Argued December 14, 1990—decision released February 26, 1991

*Lawrence M. Lapine,* with whom, on the brief, was *Christopher R. Bello,* for the appellant (plaintiff).

*William O. Riiska,* with whom was *Gregory T. D'Auria,* for the appellees (named defendant et al.).

*Duncan B. Hume,* for the appellees (defendant W. Parker Seeley et al.).

BORDEN, J. The principal issue in this appeal is whether the trial court properly allowed the jury to ask questions of the witnesses. The plaintiff, Horton Spitzer, brought a professional malpractice suit against his former lawyers, the defendants W. Parker Seeley and Seeley's law firm, Pullman, Comley, Bradley and Reeves, and against his former accountants, the defendants William Arnone and Arnone's accounting firm, Haims and Company, to recover losses incurred in the sale of his business. During the trial, the court allowed the jurors, after direct and cross-examination of each witness, to submit written questions to be asked of the wit-

ness after review of the questions by the court and counsel. The court placed a continuing objection and exception to this procedure on the record for all parties. The jury found for all the defendants in a general verdict, and the plaintiff moved to set aside the verdict. The trial court denied the motion and rendered judgment in accordance with the verdict. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

The plaintiff claims that the trial court improperly: (1) permitted the jury to ask questions of the witnesses; (2) failed to set aside the verdict as against the weight of the evidence; and (3) charged the jury regarding Arnone's contributory negligence. We hold that a trial court has the discretion to permit the jurors to ask questions of witnesses. We conclude that in light of the manner in which the trial court permitted juror questioning in this case, the court did not abuse its discretion in doing so. We also conclude that the plaintiff's remaining claims are meritless. We therefore affirm the judgment.

The jury could reasonably have found the following facts. In 1969, the plaintiff and his partner founded the Watchguard Corporation (Watchguard), a company involved in selling burglar and fire alarm systems. After buying out his partner in 1978, the plaintiff was the sole shareholder and president of Watchguard until 1983 when he sold his interest to the National Guardian Corporation (National Guardian) for the price of $2.2 million. Prior to the sale, the plaintiff engaged the services of the defendants Seeley and Pullman, Comley, Bradley and Reeves to assist him in negotiating the contract of sale. Additionally, the defendants Arnone and Haims and Company, accountants who had performed the limited services of compiling annual financial statements and advising on matters of cor-

porate and personal income tax planning for the plaintiff and Watchguard, were asked numerous questions relating to the sale by Seeley and the plaintiff.

Section 2.2.4 of the proposed contract of sale provided that after National Guardian reviewed Watchguard's accounting books, adjustments in the purchase price would be made for "deferred income."[1] Because the nature of Watchguard's business required that customers pay in advance for services to be rendered by Watchguard in the future, Watchguard placed a portion of the advance payments in a "deferred income" account. This deferred income account was reflected as a liability on the balance sheet. Not all of the advance payments, however, were treated as deferred income; some were reflected as current income. As a result of these differing accounting treatments of advance payments, a discrepancy existed on Watchguard's books regarding the amount of future services for which it had already been compensated.

During the course of negotiations of the contract, the plaintiff was concerned about the effect that § 2.2.4 would have on the ultimate purchase price. The plaintiff expressed these concerns to Seeley, who was representing the plaintiff, and the plaintiff and Seeley also expressed these concerns to Arnone.[2]

---

[1] Section 2.2.2 of the final contract provided: "Undisclosed 'Deferred Income'. The Purchase Price will be reduced in an amount equal to the aggregate amount of money (if any) received by the Company, directly or by any of its employees or agents, at or prior to the Closing Date, which is attributable to services to be rendered subsequent to the Closing Date, except to the extent that any of such money received has been included in an amount set forth on the Closing Balance Sheet . . . ." Section 2.2.4 of the proposed contract became § 2.2.2 of the final contract, with some minor changes.

[2] Arnone and Haims and Company were not retained to represent the plaintiff for the purposes of the buy-out, but answered certain specific questions when requested to do so. Arnone and Haims and Company were the accountants that reviewed Watchguard's books at the end of the year using the financial data provided by Watchguard's own comptroller. Haims and

There were numerous discussions among the parties concerning § 2.2.4 and the effect that it would have on the purchase price. In particular, Seeley wrote to Arnone requesting that he review the contract, specifically § 2.2.4, for any problems. Arnone, upon being phoned by Seeley and the plaintiff, responded that there were "no problems" with the agreement, meaning that the provision was not uncommon or unfair in this type of buy-out arrangement. The plaintiff and Seeley, however, understood this statement to mean that there would not be a price adjustment based upon this provision. The plaintiff signed the final contract of sale and, six months later, National Guardian informed the plaintiff of a reduction of $158,522 in the purchase price pursuant to § 2.2.2 of the final contract that was required to reflect income that Watchguard had received for future services but was not reflected in the deferred income account.

Although claiming that he was unaware that there would be such an adjustment in this case, the plaintiff was familiar with Watchguard's accounting practices regarding the treatment of its deferred income and knew that the total amount of deferred income was not listed in the deferred income account. The plaintiff had often considered the tax consequences of the deferred income account when participating in tax discussions concerning Watchguard. Furthermore, the plaintiff had contacted three other individuals who had sold their security businesses to National Guardian and had learned that National Guardian had made adjustments with respect to deferred income of those businesses after the purchase.

Company did not regulate Watchguard's deferred income account, and when requested to verify the account for purposes of the buy-out, would not do so because they had not prepared or examined the account.

I

At the start of the trial, the court informed counsel that this case, with the approval of the judicial department, was to be part of a program being conducted by the American Judicature Society whereby jurors would be allowed to ask questions of witnesses. The court explained the procedure to be used, and noted a standing objection and exception on the record for all parties.

The procedure implemented by the court was as follows.[3] The court asked the jurors, at the conclusion of direct and cross-examination of each witness, whether they had any questions for that witness. If so, the court instructed the jury to retire to the deliberation room

---

[3] The full instruction to the jurors by the trial court was as follows: "[I]n this case you will be given the opportunity to ask written questions of any of the witnesses who are called to testify in this case. Please keep in mind, however, some parameters. Asking questions [is] the primary responsibility of the lawyers. That is what they are getting paid for, to ask questions of the witnesses. You won't be hearing me ask too many questions. Every once in a while I do in a jury case because I feel that there is some kind of ambiguity.

"But it is true, talking with jurors after a case, they have said to me on several occasions, we were dying to ask a witness a question. And it just never came out and so forth. Because I have told jurors in the past, well, you have to remember as skilled technicians these lawyers may want to bring out certain evidence in another witness. In other words, X may be on the stand and you are dying to know something but they would just as soon have it brought out for their own purposes by witness Y.

"So I have said, generally speaking, please be patient and hopefully by the end of the case all your questions will have been answered. Nonetheless it is true that quite often jurors have said, we wish we could ask some questions of witnesses. Well, we are going to give you the opportunity to ask questions of the witnesses in this case. But as I say, under some parameters, keeping in mind please that it is the primary responsibility of the lawyers to ask questions. So you are not encouraged to ask a large amount of questions.

"After the lawyers have finished questioning a witness what I am going to do is, I am going to ask any of you if you have any questions of the witnesses. I will just say, anybody have any questions of witness X, and that includes the alternates. If you do, just raise your hand and then we will

where any jurors who had questions wrote them down for submission to the court through the sheriff. Outside the presence of the jury, the court reviewed the questions, allowed the attorneys to object, and ruled on any objections. The court instructed the jury that it could not draw any adverse inference should the court refuse to ask a particular objectionable question. After the court had posed the jurors' questions to the witnesses, counsel were allowed to ask follow-up questions of the witnesses.

The court explained to the jury that "it is the primary responsibility of the lawyers to ask questions. So you are not encouraged to ask a large amount of questions."[4] During the course of trial, the jury submitted sixteen questions to Arnone and eleven questions to Seeley. The majority of the questions sought clarification of facts or repetition of testimony.

The plaintiff does not challenge any of the jurors' questions that the court permitted. The plaintiff claims

---

send you into your headquarters there with a written pad and write down the questions because the questions must be in writing. When I get the question[s] back I will go over [them] with the lawyers.

"Now, it may be that your question cannot properly be asked under our Connecticut laws. You say why. Well, you have to remember that . . . we have a lot of law on what kind of questions can be asked and what kind can't. It is not an attempt to keep you away from knowing what is going on. It is an attempt that has been going on for years and years . . . to make sure that the trial is fair. . . .

"So we do have a lot of rules about evidence which is why I will go over your question with the lawyers. It may be that it can't properly, under our rules, be asked. So I will bring you back and tell you, sorry about that question. We can't ask it. And I don't want anybody to be disturbed. It is not that it wasn't—I'm sure it would be an intelligent question and a good question but it may not be able to be asked. So please don't infer from that that it was some question that really wasn't a good question. It just means it violates one of our numerous rules of evidence. . . .

"So if you hear a witness and listen to a witness and there is something you still feel you really want to know then we will give you that opportunity."

[4] Thus, contrary to the plaintiff's assertion, the trial court did not "encourage" questions by the jury.

that the procedure implemented by the trial court: (1) violated his constitutional right to trial by jury guaranteed by article first, § 19, of the Connecticut constitution; (2) infringed upon the separation of powers provision of article second of the Connecticut constitution; (3) exceeded the power of the trial court by effecting a change in the rules of court without compliance with General Statutes § 51-14; (4) violated his right to due process of the law under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution; and (5) violated his right to an impartial jury under article first, § 8, of the Connecticut constitution by encouraging the jury to deliberate prematurely.

The plaintiff's first claim is that by permitting the jurors to ask questions, a procedure not previously practiced in Connecticut, the court violated his constitutional right to trial by jury because the form of the trial was altered. We disagree.

The Connecticut constitution provides that "[t]he right of trial by jury shall remain inviolate." Conn. Const., art. I, § 19. The prohibition on the abridgement of the right to jury trial "mandates that, given a recognized cause of action to which the right to trial by jury attached prior to the existing constitution, the right to trial by jury must always be available in the trial of that cause." *Gentile* v. *Altermatt,* 169 Conn. 267, 299, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); see also *Bishop* v. *Kelly,* 206 Conn. 608, 618, 539 A.2d 108 (1988).

The provision that "[t]he right of trial by jury shall remain inviolate"; Conn. Const., art. I, § 19; does not carry with it, however, the corresponding right that all court rules, procedures and methods current in 1818 would remain unchanged. Indeed, "[i]n speaking to the command of the seventh amendment to the federal con-

stitution that 'the right of jury trial shall be preserved' the United States Supreme Court (Brandeis, J.) said that the seventh amendment 'does not require that old forms of practice and procedure be retained . . . . It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with.' (Footnote and citations omitted.) *Ex Parte Peterson,* 253 U.S. 300, 309–10, 40 S. Ct. 543, 64 L. Ed. 919 (1920)." *Seals* v. *Hickey,* 186 Conn. 337, 351, 441 A.2d 604 (1982). We conclude, therefore, that the change in procedure alone did not violate the plaintiff's constitutional right to trial by jury.

The plaintiff also claims that the court, by implementing this procedure without statutory authority, "infringed upon the constitutionally protected province of the legislature" that has the responsibility of maintaining jury trials in substantially the same form as existed at common law. In support of this assertion, the plaintiff relies on *State* v. *Perrella,* 144 Conn. 228, 129 A.2d 226 (1957), *State* v. *Gannon,* 75 Conn. 206, 52 A. 727 (1902), and *State* v. *Main,* 69 Conn. 123, 37 A. 80 (1897). This reliance is misplaced.

In *Perrella,* this court rejected a constitutional challenge to a statute providing for a jury of six in a criminal case unless the defendant elected a jury of twelve at the time of pleading. *State* v. *Perella,* supra, 232. We held that "[i]t is not violative of the constitutional guarantee of the right to a jury trial for the *legislature*

to enact a statute which changes the form of jury procedure if it still maintains the substance of the institution." (Emphasis added.) Id., 231. In *Gannon* and *Main,* this court declined to read a procedural statute requiring the court to "submit to [the jury's] consideration both the law and the facts"; General Statutes (1888 Rev.) § 1630; so as to require the jury, rather than the court, to determine the constitutionality of the substantive statute at issue in the case; see *State* v. *Main,* supra; or to determine the law generally applicable to the case; see *State* v. *Gannon,* supra; because to do so would impinge on the essential characteristics of the right to jury trial. These cases stand only for the proposition that the legislature may enact changes in the procedures governing jury trials, provided that the essential form remains intact. They hardly hold, as the plaintiff argues, that only the legislature, and not the courts, may bring about such changes. We conclude, therefore, that the trial court did not infringe upon the province of the legislature in implementing the new procedure.

The plaintiff next argues that, if the asking of questions by jurors is deemed a procedural change within the judicial power, the trial court nonetheless exceeded its power because the new procedure was not promulgated pursuant to General Statutes § 51-14.[5] The plain-

---

[5] General Statutes § 51-14 provides: "RULES OF COURT. DISAPPROVAL OF BY GENERAL ASSEMBLY. HEARINGS. (a) The judges of the supreme court, the judges of the appellate court, and the judges of the superior court shall adopt and promulgate and may from time to time modify or repeal rules and forms regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. The rules of the appellate court shall be as consistent as feasible with the rules of the supreme court to promote uniformity in the procedure for the taking of appeals and may dispense, so far as justice to the parties will permit while affording a fair review, with the necessity of printing of records and briefs. Such rules shall not abridge, enlarge or modify any substantive right

tiff also argues that, because § 51-14 provides for notice and a public hearing for proposed new rules or changes in existing rules, the action of the trial court constituted a violation of the plaintiff's due process rights under the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. We reject the plaintiff's claims.

Parallel to the publication provisions of General Statutes § 51-14, Practice Book § 7 provides as follows: "Each rule hereafter adopted shall be promulgated by being published once in the Connecticut Law Journal. Such rule shall become effective at such date as the judges of the superior court shall prescribe, but not less

nor the jurisdiction of any of the courts. Subject to the provisions of subsection (b), such rules shall become effective on such date as the judges specify but not in any event until sixty days after such promulgation.

"(b) All statutes relating to pleading, practice and procedure in existence on July 1, 1957, shall be deemed to be rules of court and shall remain in effect as such only until modified, superseded or suspended by rules adopted and promulgated by the judges of the supreme court or the superior court pursuant to the provisions of this section. The chief justice shall report any such rules to the general assembly for study at the beginning of each regular session. Such rules shall be referred by the speaker of the house or by the president of the senate to the judiciary committee for its consideration and such committee shall schedule hearings thereon. Any rule or any part thereof disapproved by the general assembly by resolution shall be void and of no effect and a copy of such resolution shall thereafter be published once in the Connecticut Law Journal.

"(c) The judges or a committee of their number shall hold public hearings, of which reasonable notice shall be given in the Connecticut Law Journal and otherwise as they deem proper, upon any proposed new rule or any change in an existing rule that is to come before said judges for action, and each such proposed new rule or change in an existing rule shall be published in the Connecticut Law Journal as a part of such notice. A public hearing shall be held at least once a year, of which reasonable notice shall likewise be given, at which any member of the bar or layman may bring to the attention of the judges any new rule or change in an existing rule that he deems desirable.

"(d) Upon the taking effect of such rules adopted and promulgated by the judges of the supreme court pursuant to the provisions of this section, all provisions of rules theretofore promulgated by the judges of the superior court shall be deemed to be repealed."

than sixty days after its promulgation. Prior to such adoption, there shall be published in the Connecticut Law Journal a summary of the proposed rules and a statement that a copy of those proposed rules will be mailed to any person upon request. The published notice of the proposed rules shall also state the time when, the place where and the manner in which interested persons may present their views thereon."

The plaintiff's focus on § 51-14 ignores the fundamental principle that in our state the primary authority over matters of practice and procedure lies within the judicial branch. *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723 (1974). Even that principle is not absolute, however, since under appropriate circumstances legislative and judicial powers may constitutionally overlap. See *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 522, 461 A.2d 938 (1983); *Fishman* v. *Middlesex Mutual Assurance Co.,* 4 Conn. App. 339, 353, 494 A.2d 606 (1985). Assuming without deciding that the plaintiff's claim implicates both General Statutes § 51-14 and Practice Book § 7, we conclude that neither provision applied to the trial court's action in this case.

General Statutes § 51-14 (a) refers to "rules and forms regulating pleading, practice and procedure in judicial proceedings . . . ." Practice Book § 7 refers, in similar vein, to "[e]ach rule hereafter adopted [by the judges of the Superior Court] . . . ." There is no rule, nor has there ever been a rule, regulating or prohibiting the court's exercise of discretion in permitting jurors to ask questions of witnesses. Although there are circumstances where the action of an individual trial judge may constitute an impermissible attempt at rulemaking; see *Fattibene* v. *Kealey,* 18 Conn. App. 344, 355–56, 558 A.2d 677 (1989); this is not such a case.

Moreover, there is nothing in either General Statutes § 51-14 or Practice Book § 7 that prohibits a trial court from implementing a new procedure without its formal adoption as a rule. Such an interpretation would result in an overly burdensome restriction on the trial court's control and authority over the efficient management of the case before it. Furthermore, in this situation, where the Connecticut judicial department, at the behest of the American Judicature Society, specifically approved of the procedure permitting jurors to ask questions, within the strict confines of the precautions taken and the instructions given, we do not agree that the procedure must, as a matter of due process of law, be subject to the formal adoption procedures set forth in General Statutes § 51-14 and Practice Book § 7.

The plaintiff also argues that the procedure employed permitted the jurors to begin the deliberative process before the case was submitted to them, in violation of the plaintiff's right to an impartial jury under article first, § 8, of our constitution.[6] We disagree.

The plaintiff relies upon *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980), where we held that "it is error of constitutional magnitude [under article first, § 8,] for the trial judge expressly to instruct the jurors that they may discuss the case among themselves prior to its submission to them . . . ." See also *State* v. *Castonguay,* 194 Conn. 416, 433, 481 A.2d 56 (1984). Central to that holding, however, was the notion that the court expressly sanctioned the beginning of deliberations by discussion among the jurors. "Discussion is an integral part of deliberation." *State* v. *Washington,* supra, 428.

---

[6] The constitution of Connecticut, article first, § 8, provides in pertinent part: "In all criminal prosecutions, the accused shall have a right to . . . [a] public trial by an impartial jury." Although by its terms this provision applies only to criminal cases, we assume that the general right to a jury trial embodied in article first, § 19, includes the right to an impartial jury.

We properly expect jurors to refrain from deliberating on a case until it is submitted to them. Id. Deliberation in this sense, however, means articulating and exchanging views, albeit preliminary, with one's fellow jurors. Id. It does not mean the absence of thought, however preliminary. We cannot expect jurors to be totally passive receptors of information who are not permitted even to think about what they have heard. A rule that rests on such a futile requirement, as the plaintiff's argument suggests, would be a rule without foundation in reality. "The trial court is expected to prevent premature deliberation, not harness the human mind." *State* v. *Johnson,* 784 P.2d 1135, 1145 (Utah 1989).[7]

The principal evils of permitting premature discussion by jurors are that the jurors may thereby consider evidence unaided by the court's instructions, and that a juror who has expressed his opinion publicly to his fellow jurors may become irretrievably committed to that point of view despite evidence to the contrary. *State* v. *Washington,* supra, 426. These evils, which flow primarily from the jurors' premature discussion of the case, are not inherent in a properly safeguarded procedure of permitting jurors' questions. Permitting jurors to ask questions about what they have heard and seen does not transform their inevitable mental processes into constitutionally impermissible deliberation. Furthermore, in this case, the trial court explicitly instructed the jurors not to discuss the case among themselves, further ensuring against the risk of premature deliberation.

---

[7] In this respect, we disagree with the suggestion of the court in *DeBenedetto* v. *Goodyear Tire & Rubber Co.,* 754 F.2d 512, 517 (4th Cir. 1985), on which the plaintiff relies, that when a juror's question reflects consideration of the evidence, "the questioning juror has begun the deliberating process with his fellow jurors."

Implicit in the plaintiff's constitutional contention is the further claim that the procedure should not be permitted as a matter of judicial policy. We disagree. We conclude that whether to permit such a procedure is within the discretion of the trial court. We also conclude that, in light of the safeguards employed in this case, the court did not abuse its discretion.

In examining this issue of first impression in our state, we note that the overwhelming majority of jurisdictions that have considered the issue conclude that, although the practice of juror questions should not be encouraged, it is within the discretion of the trial court to permit such a procedure.[8] The principal risks artic-

[8] See *United States* v. *Johnson,* 914 F.2d 136, 137–39 (8th Cir. 1990) (practice within discretion of trial court, but criticized); *United States* v. *Nivica,* 887 F.2d 1110, 1123 (1st Cir. 1989), cert. denied, 494 U.S. 1005, 110 S. Ct. 1300, 108 L. Ed. 2d 477 (1990) (practice within discretion of trial court, but not favored); *United States* v. *Land,* 877 F.2d 17, 19 (8th Cir. 1989), cert. denied, 493 U.S. 894, 110 S. Ct. 243, 107 L. Ed. 2d 194 (1989) (practice matter of discretion for trial judge, but procedure implemented was "somewhat troubling"); *DeBenedetto* v. *Goodyear Tire & Rubber Co.,* 754 F.2d 512, 516–17 (4th Cir. 1985) (procedure within discretion of trial court, but practice implemented was "fraught with peril"); *United States* v. *Witt,* 215 F.2d 580, 584 (2d Cir.), cert. denied sub nom. *Talanker* v. *United States,* 348 U.S. 887, 75 S. Ct. 207, 99 L. Ed. 697 (1954) (like witness questioning by judge, procedure within judge's discretion); *State* v. *LeMaster,* 137 Ariz. 159, 163–65, 669 P.2d 592 (1983) (within discretion of trial judge, but problems noted); *State* v. *Taylor,* 25 Ariz. App. 497, 499–500, 544 P.2d 714 (1976) (discretion of trial court; practice of exercising discretion encouraged); *Nelson* v. *State,* 257 Ark. 1, 4, 513 S.W.2d 496 (1974) (trial court did not err in allowing questions by jurors); *Ratton* v. *Busby,* 230 Ark. 667, 682–83, 326 S.W.2d 889 (1959) (not error to permit questions by jurors); *People* v. *McAlister,* 167 Cal. App. 3d 633, 644, 213 Cal. Rptr. 271 (1985) (discretion of trial judge; proper procedure to have jurors write out questions and have court and counsel review prior to submission to the witness); *Ferrara* v. *State,* 101 So. 2d 797, 801 (Fla. 1958) (in appropriate circumstances, questioning proper); *Gonzalez* v. *Prestress Engineering Corporation,* 194 Ill. App. 3d 819, 826, 551 N.E.2d 793 (1990) (denial of right of jurors to ask questions in discretion of trial court); *Carter* v. *State,* 250 Ind. 13, 15–16, 234 N.E.2d 650 (1968) (procedure should not be encouraged, but should not be forbidden); *Matheis* v. *Farm Feed Construction Co.,* 553 N.E.2d 1241 (Ind. App. 1990) (procedure proper; in trial court's discretion); *Louisville*

ulated by the courts are that: (1) counsel may be inhibited from objecting to questions for fear of offending the jurors; *People* v. *McAlister,* 167 Cal. App. 3d 633, 645, 213 Cal. Rptr. 271 (1985); (2) interruptions by jurors would disrupt courtroom decorum; *Sparks* v. *Daniels,* 343 S.W.2d 661, 667–68 (Mo. App. 1961); *Superior & Pittsburg Copper Co.* v. *Tomich,* 19 Ariz. 182, 188, 165 P. 1101 (1917); (3) questions asked by the jurors may not be relevant to the issues; *State* v. *Howard,* 320 N.C. 718, 725–26, 360 S.E.2d 790 (1987); and (4) asking questions may distort the jurors' objectivity. *People* v. *McAlister,* supra.

---

*Bridge & Terminal Co.* v. *Brown,* 211 Ky. 176, 183, 277 S.W. 320 (1925) (procedure likely to "aid the jury in finding out and learning the real facts" and in understanding the evidence); *People* v. *Heard,* 388 Mich. 182, 184–88, 200 N.W.2d 73 (1972) (discretion of trial court to allow practice; may aid fact-finding process); *People* v. *Stout,* 116 Mich. App. 726, 731–33, 323 N.W.2d 532 (1982) (practice within discretion of trial judge and should be permitted because it aids fact-finding process); *Lucas* v. *State,* 381 So. 2d 140, 144–45 (Miss. 1980) (should be used only where, in trial court's discretion, it would aid jury in understanding material issue); *Sparks* v. *Daniels,* 343 S.W.2d 661, 666–68 (Mo. App. 1961) (procedure similar to judge asking questions of witness; caution must be used); *State* v. *Rodriguez,* 107 N.M. 611, 615, 762 P.2d 898 (1988) (court must carefully consider prejudice when procedure used with criminal defendant); *Sitrin Bros., Inc.* v. *Deluxe Lines, Inc.,* 35 Misc. 2d 1041, 1042–43, 231 N.Y.S.2d 943 (1962) (not error for trial court to allow juror questioning); *State* v. *Howard,* 320 N.C. 718, 725–26, 360 S.E.2d 790 (1987) (practice within trial court's discretion; better practice for jurors to write questions); *Reese* v. *Pittsburgh,* 313 Pa. 32, 34, 169 A. 366 (1933) (questioning by jurors proper); *State* v. *Barrett,* 278 S.C. 414, 418–19, 297 S.E.2d 794 (1982), cert. denied, 460 U.S. 1045, 103 S. Ct. 1445, 75 L. Ed. 2d 800 (1983) (suggest jurors write out questions and court and attorneys view outside hearing of jury; court should discourage juror questions); *Raynor* v. *State,* 1 Tenn. Crim. App. 556, 561–62, 447 S.W.2d 391 (1969) (potential problems with practice listed); *State* v. *Johnson,* 784 P.2d 1135, 1144–45 (Utah 1989) (practice not encouraged, but court should not "harness the human mind"); compare *Matchett* v. *State,* 257 Ga. 785, 786, 364 S.E.2d 565 (1988) ("direct questions from a juror to a witness are generally not permitted in this state"); *State* v. *Williamson,* 247 Ga. 685, 686, 279 S.E.2d 203 (1981) ("[i]n Georgia, the practice [of jurors directly questioning witnesses] is not permitted").

In this case, however, the procedure implemented by the trial court operated to avoid most of these risks. The jurors wrote out their questions in the jury room, and the judge and attorneys reviewed them outside the presence of the jury, where the attorneys were allowed to voice their objections. This procedure avoided the risks that an attorney might decline to object for fear of offending the jury and that jurors' questions would interrupt the court or the attorneys during the trial. Furthermore, the court instructed the jurors at the beginning of the trial that they could not draw any adverse inferences from the fact that a particular question was disallowed.[9] Reviewing and ruling on the questions outside the presence of the jury dispelled any likelihood that an impermissible question would be asked.

The last concern voiced by some courts, namely, that the jury would lose its objectivity, is equivalent to the constitutional claim of the plaintiff that we have rejected. As we have noted, we do not believe that the process implemented by the trial court impaired the jurors' objectivity by permitting them to engage in premature deliberation.

We find guidance in the approach taken by the Second Circuit Court of Appeals. In *United States* v. *Witt*, 215 F.2d 580, 584 (2d Cir. 1954), the court stated that the issue of juror questioning is a matter within the discretion of the trial judge, similar to questioning of a witness by the trial judge. It is undisputed that in Connecticut a judge is allowed to ask questions of witnesses in order to bring out the facts more clearly and to determine the truth; see, e.g., *State* v. *Smith*, 200 Conn. 544, 549, 512 A.2d 884 (1986); *State* v. *Fernandez*, 198 Conn. 1, 11, 501 A.2d 1195 (1985); and that "[i]ts exercise will not be reviewed unless it abused its

---

[9] All of the questions submitted were, in fact, allowed by the trial court.

discretion." *Hutchinson* v. *Plante,* 175 Conn. 1, 3, 392 A.2d 488 (1978). In this case, the questions asked by the jurors appear to have been intended to clarify the facts and to determine the truth.

Simply stated, asking questions by jurors may reasonably be viewed by a trial judge, who has the responsibility for the orderly and just conduct of the trial, as a useful tool in advancing the truth-seeking function of our adversarial system of justice. The trial judge who takes that view in any given case should therefore be permitted the discretion to employ such a tool.

The court did not abuse that discretion here. The court employed ample safeguards to guard against the risks normally perceived by courts in such cases and to prevent any unfairness to a party. The jurors wrote out the questions, and submitted them to the court for review and objection outside the presence of the jury. The court then read the questions to the witnesses, and the attorneys were allowed follow-up questions. We note, moreover, the propriety of the trial court's instruction that questions by the jury, while permitted, are not encouraged. Such an instruction properly ensures that the questions of jurors do not overwhelm the traditional procedure of the trial.

II

The plaintiff next claims that the trial court incorrectly failed to set aside the verdict as against the weight of the evidence. In essence, the plaintiff argues that the jury was required to believe his testimony and the testimony of his expert witnesses supporting his claim of liability, and that, therefore, the jury was required to find that one or both of the individual defendants, and not the plaintiff, was negligent. We disagree.

The conclusion of the trial court on a motion to set aside a verdict will not be disturbed unless there is a clear abuse of discretion. *Malmberg* v. *Lopez,* 208 Conn. 675, 679, 546 A.2d 264 (1988). "The trial court's refusal to set aside a verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness." Id.; see also *Todd* v. *Glines,* 217 Conn. 1, 5, 583 A.2d 1287 (1991). If, on the evidence, the jury reasonably could have decided as it did, a reviewing court will not disturb the trial court's acceptance of the verdict. *Malmberg* v. *Lopez,* supra. It is the duty of the reviewing court, however, to set aside a verdict when it finds that " 'it does manifest injustice, and is . . . palpably against the evidence. . . .' " Id., 679–80.

There was sufficient evidence to support the jury's conclusion that either the defendants were not negligent or the plaintiff was contributorily negligent. The defendants presented expert testimony that, in light of the circumstances, both Arnone and Seeley acted within the standard of care applicable to their professions. Furthermore, there was evidence that the plaintiff was aware of the manner in which Watchguard reported its deferred income and that the amount posted did not reflect the actual amount of deferred income received. The plaintiff was asked numerous times by Seeley to contact Arnone to verify the deferred income account, yet the plaintiff never did so. In fact, the deferred income account was maintained by the plaintiff's own comptroller, and the plaintiff did not question him about the actual amount in that account. Seeley reviewed the contract with the plaintiff and explained that the provision meant that if the advanced payments of customers under deferred income were not accurate there would be an adjustment. Also, the plaintiff was aware from speaking with three other individuals who had sold security businesses

to National Guardian that adjustments based upon deferred income occurred in those sales.

Nor is this a case where the manifest injustice of the verdict is so plain and palpable as clearly to denote that the jury made some mistake in applying the legal principles, or to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality. *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 206–207, 579 A.2d 69 (1990). The plaintiff's argument that partiality and prejudice may have resulted because the jury was allowed to ask questions is unsupported by our review of the questions asked during the trial. See Part I, supra. The plaintiff makes no other claim of prejudice, corruption, or partiality, nor does the record support any such conclusion.

In light of the conflicting evidence presented by the parties, "[t]he jury, in determining the facts and the reasonable inferences therefrom, could reasonably conclude as it did." *Trzcinski* v. *Richey*, 190 Conn. 285, 299, 460 A.2d 1269 (1983). The trial court, therefore, did not abuse its discretion in refusing to set aside the verdict.

### III

The plaintiff next claims that the trial court incorrectly charged the jury regarding Arnone's special defense of contributory negligence. In light of the general verdict rule, we need not review this claim. "The so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982); *Collucci* v. *Pinette,* 185 Conn. 483, 489, 441 A.2d 574 (1981). The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action; see

*Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 706, 462 A.2d 376 (1983); or distinct defenses. See *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698 (1964). A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts." *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 202–203, 520 A.2d 208 (1987); see also *Hall* v. *Burns,* 213 Conn. 446, 484–85 n.9, 569 A.2d 10 (1990).

The plaintiff's complaint alleged that Arnone was professionally negligent. Arnone asserted as special defenses that: (1) the plaintiff acquiesced in all actions taken with regard to the allegations in his complaint; (2) any damage to the plaintiff was proximately caused by his own negligence; and (3) any damage to the plaintiff was proximately caused by separate and intervening acts or failure to act on the part of persons other than himself and his firm. The plaintiff did not submit interrogatories to the jury in order to determine its findings on each of the plaintiff's claims, and the jury rendered a general verdict for the defendants.

In accordance with the general verdict rule, we "presume that the jury found every issue in favor of the prevailing party." *Finley* v. *Aetna Life & Casualty Co.,* supra, 202. Therefore, irrespective of any finding of the jury regarding the plaintiff's contributory negligence, we presume that: (1) the plaintiff did not prove that Arnone was negligent; (2) any actions taken by Arnone were done with the full knowledge, acquiescence and participation of the plaintiff; and (3) any damage to the plaintiff was caused as the result of the negligence of persons other than Arnone. Because of these presumptions, any possible error of the trial court

in instructing the jury on Arnone's special defense of contributory negligence would be harmless.

The judgment is affirmed.

In this opinion the other justices concurred.