# STATE OF CONNECTICUT *v.* HECTOR ALONZO
## (AC 30725)

Bishop, Lavine and Beach, Js.

Argued May 17—officially released August 30, 2011

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*Raheem L. Mullins,* assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III,* state's attorney, and *David Shannon,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Hector Alonzo, appeals from the judgment of conviction, rendered following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). On appeal, the defendant claims that the trial court (1) violated his state constitutional right to trial by jury when it instructed the jury that it must unanimously find the defendant not guilty of the assault in the first degree charge before it properly could consider a lesser included charge of assault in the second degree[1] and (2) violated his state constitutional rights to present a

---

[1] We will hereinafter refer to this instruction as an "acquittal first" instruction. See *State* v. *Sawyer,* 227 Conn. 566, 586, 630 A.2d 1064 (1993).

defense and to due process of law when it prohibited him from testifying about the alleged prior violent acts of the victim against a third party.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the night of February 4, 2007, the defendant went to the El Milenio Restaurant in Danbury where he encountered the two victims, Fredy Urjiles and Jose Naranjo. An altercation ensued between the defendant and the victims during which the defendant removed a box cutter from his person and stabbed the victims. The defendant was arrested and charged with attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49, assault in the first degree with a dangerous instrument in violation of § 53a-59 (a) (1) regarding his assault of Urjiles and assault in the second degree in violation of § 53a-60 (a) (2) regarding his assault of Naranjo. During the trial, the state filed a motion in limine requesting that the court prohibit the defendant from testifying about Urjiles' alleged prior violent acts against a third party, and the court granted the motion.[3] Following the close of evidence, and despite the defendant's request to the contrary,[4] the

---

[2] The defendant claims, as well, that the acquittal first instruction violated his federal constitutional right to trial by jury and to due process of law. Because, as noted subsequently in this opinion, the federal and Connecticut constitutions contain parallel language, and previous decisional law has indicated that we may look to treatment of the federal constitutional right to trial by jury to assess our similar state provision, we need not provide a separate analysis of the defendant's federal constitutional claim.

[3] The defendant alleged that the victim had physically and sexually assaulted a third party with whom both the defendant and the victim allegedly had a personal relationship.

[4] The defendant's request to charge stated in relevant part: "The defendant excepts to any instruction requiring that the jury be satisfied unanimously that the defendant is not guilty of the greater offense before deliberating on the lesser included offense, and hereby requests this Honorable Court, pursuant to Practice Book §§ 42-17 and 42-18, Article I, Sections 8, 9 and 19 of the Connecticut constitution, and the 5th, 6th, and 14th Amendments to the United States Constitution, to charge the jury with the following request: If you find that the elements of assault in the first degree have not

court gave the jury an acquittal first instruction, charging that it should proceed to a deliberation of the lesser included crime of assault in the second degree only after it unanimously had found the defendant not guilty of the crime of assault in the first degree. After deliberation, the jury found the defendant not guilty of the attempt to commit murder charge but found him guilty of assault in the first degree with regard to Urjiles and assault in the second degree with regard to Naranjo. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court violated his state constitutional rights to (a) trial by jury and (b) due process of law when it instructed the jury that it should proceed to deliberation of the lesser included offense of assault in the second degree only after it unanimously had determined that the defendant was not guilty of assault in the first degree.

We first set forth our standard of review. "A challenge to the validity of jury instructions presents a question of law over which this court has plenary review." (Internal quotation marks omitted.) *Mann* v. *Regan*, 108 Conn. App. 566, 576, 948 A.2d 1075 (2008). "It is well settled that jury instructions are to be reviewed in their entirety. . . . When the challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to

been proven beyond a reasonable doubt, or if you are unable to agree unanimously that the elements of assault in the first degree have been so proved, you may then consider whether the defendant is guilty of the lesser included offense of assault in the second degree. In other words, when you deliberate you may consider the lesser included offense if you cannot reach agreement on the greater offense."

be critically dissected for the purpose of discovering possible inaccuracies of statement . . . . Individual instructions also are not to be judged in artificial isolation . . . . Instead, [t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Makee R.*, 117 Conn. App. 191, 198, 978 A.2d 549, cert. granted on other grounds, 294 Conn. 912, 983 A.2d 275 (2009).

## A

The defendant claims that the court violated his state constitutional right to trial by jury when it improperly instructed the jury that it should consider the lesser included offense of assault in the second degree only after it had determined that the defendant was not guilty of assault in the first degree. We disagree.[5]

The defendant's claim that our state constitution prohibits the court's use of acquittal first jury instructions implicates our duty to interpret the rights and guarantees provided by the Connecticut constitution. In *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992), our Supreme Court set forth six factors to be used in analyzing an independent claim under this state's constitution: (1) the text of the operative constitutional provisions; (2) related Connecticut precedents; (3) persuasive relevant federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of our constitutional forebears; and (6) contemporary understandings of applicable economic

---

[5] The state argues that *State* v. *Sawyer*, 227 Conn. 566, 630 A.2d 1064 (1993), is dispositive with regard to the permissibility of acquittal first jury instructions in Connecticut. Our Supreme Court in *Sawyer*, however, did not determine the federal or state constitutionality of such instructions but, rather, addressed them as a matter of common law. Although the language of *Sawyer* is broad, we conclude that the issue of the constitutionality of the acquittal first jury instruction was not decided in *Sawyer* and therefore requires an independent analysis in the appeal at hand.

and sociological norms, or as otherwise described, relevant public policies.

With regard to the text of the operative constitutional provision, article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate." We conclude that this language is not directly beneficial to the resolution of the present issue because the provision does not address the manner of a jury's deliberations.

While there also are no directly applicable precedents in Connecticut, our Supreme Court has narrowly described the relevant state constitutional provision as "the right which every citizen has to demand a trial in that mode; or, in other words, to be secured from having a judgment rendered against him, without the intervention of jury." *Beers* v. *Beers*, 4 Conn. 535, 536 (1823). Our Supreme Court has held, as well, that the right to trial by jury encompasses the right to have the jury serve as the fact finder. *Seals* v. *Hickey*, 186 Conn. 337, 349–53, 441 A.2d 604 (1982) (declaring unconstitutional statute that allowed trial judge to interfere in jury's fact-finding function by giving judge discretionary power to adjust verdict in light of partial settlement with another defendant).

Although the defendant has not provided a separate federal constitutional analysis in support of his claim that the acquittal first jury instruction violates his federal constitutional right to trial by jury, we can, nevertheless, look to treatment of the federal constitutional right to a jury trial in our state constitutional analysis because the language of the state and federal constitutional provisions regarding the right to a jury trial are sufficiently similar. On the basis of these linguistic similarities, this court has determined that "federal case law can be turned to for guidance in interpreting the ambit of the fundamental right to a jury trial." *L & R*

*Realty* v. *Connecticut National Bank*, 46 Conn. App. 432, 440, 699 A.2d 291 (1997), rev'd on other grounds, 246 Conn. 1, 715 A.2d 748 (1998).

The United States Supreme Court has concluded that the right to trial by jury signifies "merely that enjoyment of th[at right] be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with." *Ex Parte Peterson*, 253 U.S. 300, 310, 40 S. Ct. 543, 64 L. Ed. 919 (1920).[6]

---

[6] In performing the *Geisler* analysis, we also must consider the relevant federal and state precedents. After a thorough search, we are able to find only one federal or state court appellate decision that explicitly declared the acquittal first jury instruction unconstitutional and that determination later was vacated by the United States Supreme Court on appeal. See *Spisak* v. *Mitchell*, 465 F.3d 684, 708–11 (6th Cir. 2006), vacated sub nom. *Hudson* v. *Spisak*, 552 U.S. 945, 128 S. Ct. 373, 169 L. Ed. 2d 257 (2007). Moreover, in reference to a death penalty case, the United States Supreme Court observed, in dicta, that it never has concluded that jury instructions were unconstitutional for requiring the jury to "unanimously reject a death sentence before considering other sentencing alternatives." (Internal quotation marks omitted.) *Smith* v. *Spisak*, 558 U.S. 139, 149, 130 S. Ct. 676, 175 L. Ed. 2d 595 (2010); see also *Bobby* v. *Mitts*,      U.S.    , 131 S. Ct. 1762, 1765, 179 L. Ed. 2d 819 (2011) (relying on its decision in *Smith* v. *Spisak*, supra, 149, to conclude that similar jury instructions were not invalid).

Additionally, several federal circuit courts and state courts have concluded that the acquittal first jury instruction is not constitutionally deficient. See, e.g., *United States* v. *Tsanas*, 572 F.2d 340, 346 (2d Cir.) (concluding that neither reasonable efforts instruction nor acquittal first instruction was wrong as matter of law), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978). In *Tsanas*, the United States Court of Appeals for the Second Circuit also determined that the court could give the instruction that it preferred if the defendant expressed no choice. Id. If the defendant expressed a choice, however, the Second Circuit concluded that the court should give the form of instruction which the defendant seasonably elects. Id. Because this language represents a discretionary policy preference rather than a legal mandate, it is of no avail to the defendant's constitutional argument.

See also *United States* v. *Harvey*, 701 F.2d 800, 806 (9th Cir. 1983) (finding no error with acquittal first instruction), overruled on other grounds by *United States* v. *Chapel*, 55 F.3d 1416, 1417 (9th Cir. 1995); *United States* v. *Moccia*, 681 F.2d 61, 64 (1st Cir. 1982) (referring to acquittal first jury instruction as "well-established"); *State* v. *Goodwin*, 278 Neb. 945, 965–66, 774 N.W.2d 733 (2009) (concluding that acquittal first instructions are not constitutionally deficient); *People* v. *Boettcher*, 69 N.Y.2d 174, 183, 505 N.E.2d

The right to trial by jury encompasses both substantive and procedural entitlements. That is, a defendant is entitled to have the state's charges assessed by a jury of his or her peers; additionally, a defendant is entitled to a jury process that is procedurally fair. As to the substantive right of a defendant to be tried by a panel of his peers, we agree with the defendant that it would be appropriate, as part of a constitutional analysis, to refer to the contours of that right when the common-law right was embedded in our state's constitution. We disagree, however, with the notion that every procedure regarding jury selection and jury process in existence in 1818 was made part of the constitutional right. Our Supreme Court has recognized that distinguishing procedure from substance can be an elusive task. *State* v. *Clemente*, 166 Conn. 501, 507–508, 353 A.2d 723 (1974). Nevertheless, while there is no precise definition of either substantive or procedural law, it generally is agreed that a substantive law is one that "creates, defines, and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 621, 872 A.2d 408 (2005).

At its core, the right to trial by jury guarantees that the criminally accused will receive a fair trial by a panel of impartial and indifferent jurors. *State* v. *Tucker*, 226 Conn. 618, 630, 629 A.2d 1067 (1993). Moreover, it guarantees that the jury will be "impartially selected from a cross section of the community." *State* v. *Ferraro*, 146 Conn. 59, 61, 147 A.2d 478 (1958), cert. denied, 369

594, 513 N.Y.S.2d 83 (1987) (concluding that court's acquittal first instruction was acceptable); *State* v. *Davis*, 266 S.W.3d 896, 905 (Tenn. 2008) (concluding that acquittal first instructions did not offend defendant's right to jury trial under Tennessee constitution), cert. denied, 557 U.S. 906, 129 S. Ct. 2790, 174 L. Ed. 2d 294 (2009); *State* v. *Labanowski*, 117 Wn. 2d 405, 424, 816 P.2d 26 (1991) (concluding that neither " 'acquittal first' " nor " 'unable to agree' " type of instruction was erroneous as matter of law).

U.S. 880, 82 S. Ct. 1155, 8 L. Ed. 2d 283 (1962). These entitlements are "the cornerstone of our criminal justice system"; (internal quotation marks omitted) *State* v. *Tucker*, supra, 630; and therefore, are inviolate. We find no support either in historical precedents or in the application of logic for the conclusion that the right to trial by jury necessarily encompasses the court's instructions to the jury with regard to the process or manner of its deliberations.

Indeed, the United States Supreme Court and our Supreme Court have determined that the procedures that accompany the right to trial by jury are not inviolate. The United States Supreme Court concluded that the right to trial by jury "does not require that old forms of practice and procedure be retained. . . . It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right." *Ex Parte Peterson*, supra, 253 U.S. 309–10. Similarly, our Supreme Court has observed that although the right to trial by jury is inviolate in its substantive capacity, there is no "corresponding right that all court rules, procedures and methods current in 1818 would remain unchanged." *Spitzer* v. *Haims & Co.*, 217 Conn. 532, 539, 587 A.2d 105 (1991). In *Spitzer*, the plaintiff claimed that the trial court violated his constitutional right to trial by jury when it permitted the jurors to question the witnesses, a procedure not previously utilized in Connecticut. Id., 537, 539. Our Supreme Court concluded that a "change in procedure alone did not violate the plaintiff's constitutional right to trial by jury." Id., 540. This determination in *Spitzer* underscores the notion that the right to trial by jury

need not extend to every feature of jury procedures as they existed in 1818. Similarly, in the present case, the court's acquittal first instruction to the jury is procedural because it governs the process that the jury must follow in its deliberation of the charges.

In support of his argument that the constitutional right to trial by jury includes the right of a jury to consider a lesser included offense without first concluding whether the state has proven the greater offense, the defendant relies on A Digest of the Laws of the State of Connecticut, written by former Connecticut Supreme Court Chief Justice Zephaniah Swift. In that treatise, Justice Swift describes the jury's right to convict a defendant on the lesser included offense rather than the greater offense, asserting that "[w]here the accusation includes an offence of an inferior degree, the jury may discharge the defendant of the higher crime, and convict him of the less atrocious." 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 413. Justice Swift later noted that "[i]n respect to the form in which a verdict should be given, which thus partially convicts, or acquits, it is holden that it ought to find specifically not guilty of the higher, and guilty of the inferior charge: and if it merely find the defendant guilty of the inferior charge, *it will be of no avail.*" (Emphasis added.) Id., p. 414. This description appears to require the use of the acquittal first approach. The defendant argues, however, that the two aforementioned excerpts, taken together, constitute an endorsement of the "modified" acquittal first instruction, rather than the traditional acquittal first instruction. Under this approach, the jury may consider both the greater and lesser offenses in any order that it chooses. We decline to speculate, however, that the conjunctive reading of these excerpts constitutes an endorsement of the modified acquittal first instruction. To the contrary, we believe that an objective reading of these

passages from Justice Swift does not lend support to the defendant's argument based on historical factors.

Moreover, even if Justice Swift's statements constituted an endorsement of the modified acquittal first instruction procedure, our appellate courts consistently have observed that not every aspect of the right to trial by jury that existed in 1818 is applicable today. For example, at the time of the ratification of the Connecticut constitution, an individual was required to own property in order to be eligible to serve as a juror. J. Proffatt, A Treatise on Trial by Jury, Including Questions of Law and Fact (1877) pp. 160–61. More than twenty years later, referencing the Act of 1837, our Supreme Court dispensed with the property qualification. See *Ladd* v. *Prentice*, 14 Conn. 108, 118 (1840) (asserting that act of 1837 removed freehold qualification). Despite this property ownership requirement at the time of the ratification of the Connecticut constitution, it is understood in the present day that an individual is not disqualified from a jury on the ground that he does not own property.

Similarly, in *Colt* v. *Eves*, 12 Conn. 242, 251 (1837), our Supreme Court concluded that although the city charter's provision, which allowed the jury to be "taken from the city, and not from the body of the county," did not conform to the exact process used in England to collect jurors, it did not violate the party's right to trial by jury. Our Supreme Court reasoned that requisite conformity to English procedures would be impossible under the developing American system. Otherwise, the court would be obliged to prohibit then existing procedures such as the right to a jury of six or the ability of any elector to serve as a juror. Id., 252. Our Supreme Court concluded that, so long as the right to trial by jury was not impaired, "although it may be subject to new modes, and even rendered more expensive, if the public interest demanded such an alteration, it would

not be a violation of the constitution." Id. The court observed that there was a distinction between the substantive right to trial by jury, which could not be abridged, and the procedural application of such right, which was malleable. Id., 252–53.

Lastly, we have found no authority to suggest that any applicable economic or sociological norms exist that would influence our determination of the permissibility of acquittal first instructions. Pursuant to our *Geisler* analysis, therefore, we conclude that the defendant's right to trial by jury was not violated by the court's instructions with regard to the jury deliberation process.

### B

The defendant also claims that the acquittal first instruction violated his state constitutional right to due process of law[7] because it created the possibility that the jury would engage in a compromise verdict.[8] We disagree.

---

[7] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. . . ."

[8] The defendant also claims that the acquittal first instruction encroaches on the province of the jury as fact finder. This argument, however, previously was resolved by our Supreme Court in *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993) ("[i]t is, moreover, the duty of the court to structure the jurors' deliberations in a manner that permits them to perform in an orderly fashion their fact-finding function in relation to the charged crime and any lesser included offenses"). Additionally, the defendant argues that an acquittal first jury instruction is problematic when utilized in conjunction with a cognate pleadings approach in which the greater offense may not encompass all of the elements of the lesser included offense. The defendant claims that by preventing the jury from considering the lesser offense before deciding the greater offense, the jury is thereby precluded from considering elements of the lesser offense that could cast reasonable doubt on the state's claims regarding the greater offense. In making this argument, however, the defendant asks this court to speculate that the jury would not follow the court's instructions regarding the state's burden of proof regarding the

The term "compromise verdict" normally is used to denote the practice of "some jurors exchang[ing] their convictions on one issue in return for concession by other jurors on another issue." *Stein* v. *New York*, 346 U.S. 156, 178, 73 S. Ct. 1077, 97 L. Ed. 1522 (1953). Our Supreme Court has noted that although it has recognized that jurors may in fact compromise, it has never sought to encourage compromise and certainly has never openly advocated it. *State* v. *Sawyer*, 227 Conn. 566, 586, 630 A.2d 1064 (1993). In advancing this argument, the defendant invites this court to speculate that the jury likely would reach a compromise verdict simply because it was charged with an acquittal first instruction. We decline to engage in such speculation as we are unconvinced by the defendant's argument that an acquittal first instruction creates any momentum toward a compromise verdict.[9]

On the basis of this precedent and our review of the court's instruction to the jury in the present case, we conclude that there was no reasonable possibility that the jury believed that a compromise verdict was permissible.

## II

The defendant next claims that the court improperly prohibited him from testifying about Urjiles' alleged prior violent acts against a third party in violation of his state constitutional rights to present a defense and to due process of law. We disagree.

greater offense, a speculation we are unwilling to undertake. *State* v. *Mitchell*, 110 Conn. App. 305, 314, 955 A.2d 84, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008). Additionally, because the defendant does not claim that the greater offense in this instance does not contain all the elements of the lesser offense, this aspect of his claim is tantamount to a request for an advisory opinion. For both reasons, we reject this claim as lacking in merit.

[9] "The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 276, 962 A.2d 781 (2009).

The following additional facts are necessary to the resolution of this issue. During the trial, the state filed a motion in limine requesting that the court preclude the defendant from testifying in regard to any alleged act of violence by Urjiles toward anyone other than the defendant. At trial, the defendant objected to the state's motion on the grounds that the failure to admit such evidence would curtail his ability to present a defense and would preclude evidence that demonstrated the defendant's state of mind at the time that he committed the crime. The court granted the state's motion and precluded the evidence on the grounds that *State* v. *Muhammad*, 91 Conn. App. 392, 881 A.2d 468, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005), prohibited testimony regarding Urjiles' alleged specific acts of violence against third parties.[10] We agree.

In *Muhammad*, the court refused to allow the defendant to testify about his victim's alleged prior assault of a third party. This court concluded that although "[e]vidence of specific acts of violence previously committed by a victim against a defendant offered in support of the defendant's self-defense claim [i]s admissible to show the state of mind of the defendant at the time of the [incident]"; *State* v. *Stavrakis*, 88 Conn. App. 371, 379–80, 869 A.2d 686, cert. denied, 273 Conn. 939, 875 A.2d 45 (2005), citing *State* v. *Collins*, 68 Conn. App. 828, 838, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002); we have "decline[d] to extend th[is] exception to alleged prior violent acts by the victim against a third party." *State* v. *Muhammad*, supra, 91 Conn. App. 406 n.10. Because the defendant in the present case sought to testify about the alleged prior violent acts of Urjiles against a third party, the court properly denied the admission of such testimony.

---

[10] Because *State* v. *Muhammad*, supra, 91 Conn. App. 392, is dispositive of this issue, we need not address the defendant's second claim that Urjiles' alleged prior violent acts against a third party were not too remote in either time or connection to preclude their admission.

On the basis of our review of the entire record, we conclude that the ruling did not violate the defendant's state constitutional right to present a defense or to due process of law. Accordingly, we conclude that the court did not abuse its discretion in prohibiting the defendant from testifying about the alleged prior violent acts of Urjiles against a third party.

The judgment is affirmed.

In this opinion the other judges concurred.