### PACIFIC IMPROVEMENT CO. v. WEIDENFELD.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 31.

1. Pledges ⬅️56(1)—Where railroad delivered bonds for advances to plaintiff, who pledged them, he could not complain that bonds were sold by pledgee after receiving credit on his indebtedness to pledgee in amount greater than that due from railroad.

Where railroad, to secure advances, delivered bonds to plaintiff, who delivered bonds to defendant to secure his indebtedness to defendant, and where it was agreed between the railroad, plaintiff, and defendant that the railroad should make note for advances to plaintiff, which plaintiff should indorse to defendant, who agreed to collect note from the railroad for the account of the plaintiff, and credit his personal account with such amount, and where such note was in fact executed to plaintiff, and indorsed by plaintiff to defendant, pursuant to such agreement, but was not paid by the railroad, and where, on plaintiff's failure to pay indebtedness, the collateral, including such bonds, was lawfully sold, and plaintiff given credit on his indebtedness to defendant for amount of proceeds of bonds in an amount greater than the face and interest of the note, the plaintiff, having suffered no damage by reason of the sale of the bonds, could not complain thereof.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Witnesses ⟞246(1)—Jurors should not be permitted to interrupt witnesses with unnecessary questions.**

Jurors should not be permitted to interrupt witnesses with unnecessary questions, since a jury should listen to evidence and counsel should elicit it.

In Error to the District Court of the United States for the Eastern District of New York.

Action by Camille Weidenfeld against the Pacific Improvement Company. Judgment for plaintiff on the verdict of a jury, and defendant brings error. Reversed, and new trial ordered.

See, also, 267 Fed. 699.

Larkin, Rathebone & Perry, of New York City (Adelbert Moot, of Buffalo, N. Y., of counsel), for plaintiff in error.

Walter Jeffreys Carlin and Herman J. Witte, both of New York City (Walter J. Carlin and Francis M. Scott, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. The facts of this case, as pleaded, admitted, or proven beyond any doubt, are in our judgment sufficient to dispose of the litigation. We shall therefore state their substance, leaving without comment several matters of law much argued at bar.

The gist of complaint is that plaintiff (Weidenfeld) was in 1893 the liquidating partner of his firm, and in respect of the transactions producing this litigation may be spoken of as the sole actor, although it had been the firm that had long dealt with defendant. He had deposited with defendant (Pacific Company) in or before 1893 various securities, including "over 300" bonds of a railroad company, as collateral to his indebtedness to Pacific Company. Of these bonds 208 had previously been delivered by the railroad company to plaintiff as security for advances made to that company by him. While the said 208 bonds and others of same issue (to wit, the above-mentioned "over 300") were in possession of Pacific Company, and hypothecated for plaintiff's debt, as above set forth, it is alleged as agreed (necessarily between plaintiff, defendant, and the railroad company) that the railroad should make its promissory note to Weidenfeld for the amount of his advances to it, formally pledging these same 208 bonds (already pledged by Weidenfeld to Pacific Company and in the latter's possession) as security; Weidenfeld would then indorse such note to Pacific Company, which would then "collect the said note from (the railroad company) for account of the plaintiff, and credit his personal account with the said amount." When and if the note was paid, the 208 bonds were to be turned over to the railroad company.

The complaint further avers, that when (long before the note incident) Pacific Company received the 208 bonds from Weidenfeld, it had "due notice" that they "were the property of the" railroad company, and that when the note was given and indorsed Pacific Company agreed "to release the said 208 bonds from any lien" created by Wei-

denfeld's previous hypothecation of the same, and to hold them only as collateral to and for the said note. This last allegation was duly denied in the answer.

As next alleged a note for $74,746.87 was given in 1897 (specifying the 208 bonds as collateral therefor) by railroad company to Weidenfeld, and was duly indorsed by the latter to Pacific Company, all in pursuance of the agreement above outlined. The gravamen of action as pleaded is that railroad company never paid the note, that Pacific Company still has both note and the 208 bonds, and refuses to return either to plaintiff, wherefore Weidenfeld has suffered damage in the sum of $459,466.67; and he sues for that amount, apparently the face of the note and interest, plus the assumed value of the bonds.

Of this complaint it may be noted that it states no facts entitling plaintiff to the judgment prayed for. He might have been entitled to the redelivery of the note and collateral; but the damages for failure to redeliver could never exceed what he would lose by any failure to collect and "credit his personal account." The trial evidence showed without contradiction that in or before 1893 Weidenfeld hypothecated as a small part of the collateral to his debt to Pacific Company of about $4,000,000, 333 bonds of said railroad company; that company complained to defendant that as to the 208 above mentioned (or some of them) he had no lawful right to use them as collateral to his own debt. The railroad was actually indebted to Weidenfeld, and the note scheme as pleaded was carried out, with the important exception that there was not the least evidence that upon due consideration the Pacific Company ever released the 208 bonds from the lien created by Weidenfeld's pledge of 1893.

Whatever may have been the true relation between Weidenfeld and the railroad as to these 208 bonds, no attack was ever made upon the rights of Pacific Company as pledgee. The railroad bonds were evidently of doubtful value, at least for purposes of sale in open market, and the intent and effect of the transaction incompletely set forth in complaint, was that, if railroad company paid to Pacific Company what it owed Weidenfeld, the latter company would hand back to the railroad the bonds, and credit Weidenfeld's indebtedness with the note proceeds; and it may be noted that the complaint nowhere claims that defendant was to collect the amount of the note, and hand the cash over to Weidenfeld. He was to get credit for this comparatively small sum on a debt of millions; in effect, the arrangement was but one way of possibly realizing on some very poor collateral.

The railroad company did not pay the note, nor did plaintiff pay defendant $4,000,000; whereupon in 1897, on due notice, the collateral to the indebtedness of Weidenfeld to Pacific Company, including the 208 bonds, was lawfully sold. That the sale included these bonds is so clearly proved that we do not discuss the matter. The collateral was insufficient to extinguish Weidenfeld's indebtedness by over $800,000, and in that sum he has remained indebted to defendant ever since.

[1] These particular 208 bonds were separately sold, they brought more than the face and interest of the note pleaded, and Weidenfeld

admittedly had credit for the whole amount. The railroad company has not complained so far as we know, and whether it did or not is immaterial in this action. But as to Weidenfeld we hold it self-evident on these facts that he has suffered at the hands of defendant neither injuria nor damnum, and a verdict should have been directed for defendant.

The jury was permitted to give verdict, practically for the amount of the note and interest. But the note had been satisfied out of the collateral, even according to the tenor of the complaint, and if the railroad, which (according to plaintiff) owned that collateral, had any cause of complaint, this plaintiff certainly had none. So far as we know the railroad has remained satisfied for over 20 years.

[2] Much of the confusion in this case arose from the conduct of certain jurymen, who, unchecked by the court, interrupted with unnecessary questions upwards of 35 times, not infrequently at some length. A jury should listen to evidence, counsel should elicit it, and the court should discourage, and, if necessary, suppress, such idly curious jurors as this record displays.

Judgment reversed, with costs, and a new trial ordered.