SITRIN BROTHERS, INC., Plaintiff, *v.* DELUXE LINES, INC., Defendant.

County Court, Oneida County, August 25, 1962.

*Ferris, Hughes, Dorrance & Groben* (*John Liddy* of counsel), for plaintiff. *Ryan & Cochi* for defendant.

EDMUND A. MCCARTHY, J. This was Action 194 on the Oneida County Court June Term 1962. It was tried before a jury and a verdict rendered in the sum of $500.50 for the plaintiff. After the entry of the jury's verdict, a motion was made to set the verdict aside as being contrary to the law and contrary to the evidence under section 549 of the Civil Practice Act.

The sharpest question of fact in this case that the jury was called upon to decide and determine was whether or not the driver, Mr. Thorpe, of the Deluxe Lines hit this door and damaged it and its respective parts. Three witnesses, at least, for the plaintiff testified as to the collision and the accident. Mr. Thorpe testified to a general denial of accident liability or collision. The witnesses for the plaintiff testifying after a lapse of two years or more, presented evidence that the door and its sections were damaged and that they assisted in the repair of this door. Mr. Bankert who finally furnished the sections and made the repairs to the door of a permanent nature, testified that he saw damage marks on 11 feet of the door. Now this was all evidence on the part of the plaintiff. Whether it was 2 feet, 4 feet, 6 feet or 11 feet was a question for the jury to determine as a matter of fact after evaluating all of the evidence.

There was evidence that during the period subsequent to the accident there was electrical trouble with this door which was demonstrated by the blowing of fuses, and Mr. Diehl was called

to make certain inspections of the electrical equipment and in the course of these inspections he recommended that the motor be opened up and its interior examined. These checkups were six and nine months after the accident as alleged and his recommendation was not followed and the only evidence that was submitted to the jury was his estimate as to the cost of such recommended dismantlement of the motor. The jury found as a matter of fact that there was no worth to this proof as to damage and they disregarded this testimony entirely.

We always have a divergence of testimony and alleged facts in all jury cases and this one was no exception, because we were dealing with the ordinary laboring class of intellect who are not too keenly interested in the Sitrin Brothers repairs and probably knew that the door had been damaged but how far or where the damage went was no concern of theirs and consequently, their recollection was rather hazy.

Part of the evidence indicated that this truck was backing up a grade in front of this door and if the grade was of sufficient plane, some part of the van of the truck could have hit the door without damaging the protruding warning lights on the top edge of the van and apparently the jury so found.

What it amounted to, was the question of integrity which was submitted to the jury and they believed the plaintiff's witnesses and did not believe Mr. Thorpe.

During the trial several of the jurors who probably had some knowledge of electrical equipment propounded one or two questions with reference to electric motors and their operation. These questions were directed to Mr. Diehl, an expert witness. Objection was taken by counsel to this procedure after the jury retired.

This point does not seem to have been covered by any New York State precedent, although we do find in American Jurisprudence (vol. 53, p. 623) under the heading, "Trials," a reference to the effect that, "Ordinarily, there is no occasion for a juryman to interrogate a witness. The fact that inquiries are propounded by a juror does not obviate the necessity of interposing objection to save the question for review.

"But in some cases the more orderly practice would require the trial court in its discretion to ask the juror to indicate the point of his inquiry, and then to see that the question is properly formulated, as by directing counsel to put it so as to afford the usual opportunity for objection and exception."

The type of questions asked by these various jurors would have been difficult to formulate in the lawyer's language and

perhaps the purpose of the inquiry would have been completely lost.

In Minnesota, the Supreme Court regarding the questioning of witnesses by jurors has commented that it is a "commendable thing." (1 L. R. A. [N. S.] 839.)

In most cases the practice of allowing jurors to question witnesses has either been approved or the fact that such questions were asked or permitted by the trial court has been held not to constitute error. (159 A. L. R. 348.)

In *Schaefer* v. *St. Louis & Suburban Ry. Co.* (128 Mo. 64, 75) the court said, "We do not see how this could possibly be prejudicial to the plaintiff, and do not see why it was not a commendable thing in both the court and the jury endeavoring to ascertain just exactly the situation at the time of the injury, so that they could properly determine the case before them. In fact, the objection is rather a novel one coming from the plaintiff."

Our courts have taken the position that whether a juror should be permitted to interrogate witnesses is one within the sound discretion of the trial court. (*People* v. *Knapper*, 230 App. Div. 487.)

The questions asked in this case by the jury apparently were in an endeavor to get them to better understand the trouble with electric circuits controlling motors, and their inquiry covered a field in which apparently counsel was not too interested or too well advised and as a result of their inquiry and the answers of the witness, they made no award for alleged damage to electrical equipment. Consequently, their inquiry was in search of knowledge which the evidence had not disclosed to them and which enabled them to throw out the claim for electrical damage.

Under the circumstances of this case, it cannot be said that the questions asked by the jurymen were prejudicial to the defendant, rather these questions were helpful to the defense.

During the trial of this case the defendant sought to emphasize the possibility of fabrication of the plaintiff's story. To overcome such proof, the plaintiff offered Exhibits 3, 4, 5 and 6 being copies of letters beginning May 5, 1960 and ending November 10, 1960 said to have been written by the plaintiff to the defendant concerning the subject matter of this lawsuit, and one letter in particular dated September 29 mentioned a conversation had by W. Sitrin with Donald Boolster one of the officers of the defendant in the Utica office of the defendant. Objection was taken to the introduction of these letters and it was strongly urged that they were self-serving declarations. The general rule is that such statements are self-serving and are inadmissible, but there

are exceptions to this general rule and this case seemed to present one of these exceptions because of the accusation of fabrication. (*People* v. *Raizen,* 211 App. Div. 446; *Latimer* v. *Burroux,* 163 N. Y. 7.)

There is a well-established exception to the hearsay rule that where the testimony of a witness is assailed as a recent fabrication, it may be confirmed by proof of declarations of the same tenor before the motive to falsify existed. (*People* v. *Singer,* 300 N. Y. 120, 123.)

It is the opinion of this court that a fair trial was given to the issues in this case for both parties and a just and fair verdict was returned by the jury solely on the integrity of the witnesses sworn.

Motion to set aside the verdict as contrary to law and the evidence and for a new trial is hereby denied.