*Supp. 12 Opinion
SAETA, J.
Defendant was convicted of violating Penal Code section 484 (petty theft) after a jury trial. The prosecution introduced evidence by security guard Valdz that defendant had concealed three packages of meat on his person in a supermarket; had failed to pay for the meat at a cash register; and was apprehended by Valdz as the defendant approached the exit door. Defendant testified that he had put the meat in a candy bin because the checkout line was too long; left the main shopping area through a turnstile; went to the liquor department; and was there confronted by the security guard. When defendant concluded his testimony a juror asked whether the jury could ask for clarification on a point. The trial judge told the juror that the question could be submitted in writing and then the court would determine whether or not it could be asked. The morning session was then concluded.
Following the noon recess, the defense rested without any further evidence being taken. The judge showed counsel the juror’s questions which read as follows; “Does the liquor department have a separate entrance from the food department? Can you go from one area to the other without going through a checkout stand?” The judge stated he had no objection to the questions and asked counsel if either one of them cared to ask the questions. Defense counsel objected to the timing of the question as all evidence had been admitted, to the propriety of a juror asking a question and to the possible bolstering of the People’s case by answering a possible doubt in the mind of that juror. The People had no objection. The defense preferred, if the questions were to be asked, that they be asked by the court rather than by counsel. The judge overruled the objection and called Valdz as the court’s witness.
Before asking the two questions the judge admonished the jurors not to speculate that because the court was asking the question that it was any more important or significant than any other question during the trial and cautioned the jury not to overemphasize one part of the evidence over another. Valdz answered the two questions and one clarifying question by the judge. Both sides then rested. On appeal the defendant asserts that the above-described procedure was prejudicially erroneous. We disagree and hold that the trial judge utilized the correct procedure in all respects.
Three questions are involved in analyzing the procedure used. The first is the timing of the interrogation of Valdz. The second is the propriety of *Supp. 13 the judge asking the questions. The third is the propriety of a juror generating the questions asked by the judge.
Under Penal Code section 1093 the trial judge can control the order in which the trial proceeds. In People v. Murray (1970) 11 Cal.App.3d 880 [90 Cal.Rptr. 84] the court called a witness who might have corroborated defendant’s alibi after defendant had concluded testifying. The Court of Appeal found no error or misconduct in that procedure. Evidence Code section 775 reads as follows: “The court, on its own motion or on the motion of any party, may call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party. Such witnesses may be cross-examined by all parties to the action in such order as the court directs. ” There is no limitation in section 775 as to when the court may exercise its power to call witnesses. The only limitation is that the judge not show partiality or bias in examining a witness. (Official comments to Evid. Code, § 775.) Judge Rothman in his admonition to the juiy prior to questioning Valdz complied with this requirement. We think it is the better practice, unless unusual circumstances indicate otherwise, for the judge to withhold his questioning or calling of a witness until after the parties have concluded their examination so as to give the parties a full opportunity to present all relevant evidence. We also conclude that allowing the parties the opportunity to call the witness or to interrogate prior to the judge doing so helps achieve the impartiality required.
The second aspect of this issue, the propriety of a judge asking questions in a criminal trial, has been addressed several times in the California cases. The judge has the power and the duty to ask questions and in the case under review it was appropriate for the court to ask the questions posed by it to the witness. (People v. Rigney (1961) 55 Cal.2d 236, 241-244 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186]; People v. Donovan (1969) 272 Cal.App.2d 413, 421-422 [77 Cal.Rptr. 285]; People v. Bowman (1966) 240 Cal.App.2d 358, 382-383 [49 Cal.Rptr. 772].)
The third question, the propriety of a juror asking a question, is apparently one of first impression in California law although there are two civil cases that tangentially address the problem: Maris v. H. Crummey, Inc. (1921) 55 Cal.App. 573, 578-579 [204 P. 259] and O’Nellion v. Haynes (1932) 122 Cal.App. 329, 333 [9 P.2d 853], In the Crummey case *Supp. 14 the appellant claimed error in the jury asking assertedly improper questions. The appellate court rejected the contention on the basis that no objection had been made to the questions in the trial court. The appellate court did not state what the questions were, how they were asked or give other details concerning the questions or the propriety of questions by the jury. The case was decided on the basis that the appellant should have objected in order to preserve this ground of appeal. In the Haynes case, a witness mentioned the lack of insurance coverage in response to a juror’s question. While the appellate opinion mentions an “irregularity” in the proceeding (122 Cal.App. at p. 333) it appears to us that the irregularity was in the mention of insurance, not in the juror asking the question.
There are, however, several non-California opinions sanctioning the practice of juror questions. In People v. Heard (1972) 388 Mich. 182 [200 N.W.2d 73], the Michigan Supreme Court stated, at page 76: “It would appear that in certain circumstances a juror might have a question which could help unravel otherwise confusing testimony. In such a situation, it would aid the fact finding process if a juror were permitted to ask such a question.”
In the recent case of State v. Taylor (1976) 25 Ariz.App. 477 [544 P.2d 714 at pp. 716-717] the Arizona Court of Appeals wrote as follows: “[t]he practice of controlling direct questions by jurors to witnesses is to be encouraged because experience teaches that it is inherently dangerous to allow the unrestrained questioning of witnesses by jurors. Many trials have been disrupted, mistrials have developed and actual reversals have resulted from prejudicial questioning of witnesses by members of the jury. [Citations omitted.]
“We are also mindful that a well informed juror serves the cause of justice. In some cases it is important to clarify a problem in a juror’s mind. It may sometimes be necessary for a juror to call an important matter to the attention of court and counsel. We therefore think it is important for the trial judge to control direct questions to the witnesses by members of the jury, but we also believe jurors should be afforded the opportunity to direct any questions or problems they may have to the court.”
We believe that the Arizona and Michigan courts have reached a sound solution to a common trial problem. Accordingly, we hold that the *Supp. 15 procedure adopted by Judge Rothman was the correct one and that no error occurred in having the juror write the questions for consideration by the court and counsel prior to their submission to the witness.
The judgment of conviction is affirmed.
Cole, P. J., concurred.