21810

The STATE, Respondent, v. Dennis G. BARRETT, Appellant.
(297 S. E. (2d) 794)

*George W. Speedy* and *Michael E. Stegner,* both of *Furman, Speedy & Stegner,* Camden, and *S. C. Com'n of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Sr. Asst. Atty. Gen. Brian P. Gibbes* and *Sol. James C. Anders,* Columbia, *for respondent.*

Nov. 22, 1982.

*Per Curiam:*

The Defendant-Appellant, Dennis G. Barrett, was indicted and tried for the offenses of: (1) kidnapping, (2) armed robbery, (3) assault and battery with intent to kill, and (4) grand larceny of a motor vehicle. The jury found him guilty of armed robbery and assault and battery of a high and aggravated nature (a lesser offense of assault and battery with intent to kill), and of grand larceny of a motor vehicle. He was found not guilty of kidnapping and of assault and battery with intent to kill. After being sentenced to twenty-five years, he appealed, claiming the right to a new trial because of alleged errors on the part of the trial judge.

The questions submitted to this Court, as taken from Appellant's Brief, are as follows:

> 1. Did the trial judge commit error in allowing members of the jury to directly question Appellant when he was on the witness stand and in not declaring a mistrial after he had permitted such questioning on the ground that such questioning violated Appellant's right to an impartial jury trial?
> 2. Did the trial judge commit error in not quashing the

indictments for armed robbery and kidnapping at the outset of the trial, or in requiring the state to elect between the indictments, on the ground that allowing the state to proceed to trial on both indictments placed Appellant in double jeopardy?

We dispose of the second question first. At the beginning of Appellant's trial, his attorney moved to quash the indictment for kidnapping and armed robbery on the ground that the elements needed to prove both were in the particular instance identical in nature, placing Appellant in double jeopardy. The trial judge refused the motion. The issue might be disposed of by merely saying that the question is moot because Appellant was found not guilty of kidnapping. We are, however, in agreement with the trial judge because the elements of the offenses are not the same. The double jeopardy test normally used by the court is whether the evidence necessary to support one charge in an indictment would have been sufficient to procure a legal conviction upon another charge in the indictment. The offense of armed robbery involves the taking of one's property through force or threat of force. Kidnapping involves the taking control of a human being through force or threat of force. Appellant was not entitled to require the State to elect and the trial judge properly allowed the case to proceed to trial on all counts in the indictment.

The other question involves an issue upon which this Court has not spoken except in the case of *State v. Bradford*, 87 S. C. 546, 70 S. E. 308 (1911). That case is of some significance but not greatly helpful to the bench and bar. While Defendant Barrett was testifying on his own behalf, the foreman of the jury stated, "I have a question for the judge. I don't know whether I am allowed—" Apparently, he then handed a written question to the judge, who after consulting with counsel for both the State and Appellant, said, "This is the question that the foreman of the jury asked: Was the gun a double barrel action or a single barrel action and was it cocked?" After the question had been answered, the judge turned to the jury and said, "Are there any other questions?" Thereafter, some seven questions were asked by the jury. Counsel for Appellant interposed objections and

timely moved for a mistrial ". . . on the basis of the exchange between the jury and the witness." The motion was overruled.

We have reviewed all questions and answers incident to the jury's interrogation and find no prejudice. Accordingly, there is no reversible error.

Inasmuch as the matter of jurors seeking to ask questions of witness involves a reoccurring problem at trials, we elaborate. In The State Trial Judge's Book, published under the sponsorship of the National Conference of State Trial Judges and the Joint Committee for Effective Administration of Justice (1965), we find the following, of which we approve:

> The effort of a juror to ask a question of a witness during the trial of the case presents a delicate problem. Most courts hold that jurors should not be permitted to propound direct questions to the witnesses for the reason that there is no way of controlling questions directed at nonmaterial prejudicial matter. Questions by juror may be embarrassing to a witness, the judge, or the attorney. They may adversely influence other jurors and have a prejudicial effect on the case. They always make it difficult or embarrassing to object.
>
> Many good suggestions have been advanced as to how to handle the situation when it arises, short of an arbitrary refusal to permit a juror to ask any questions. The juror may be told that if he will be patient the matter of his concern will very likely be covered in due course by further questions on direct or cross-examination. He may be advised to reduce his question to writing and pass it on to the judge. The judge may then call the attorneys to the bench and present the request to them. He may hear and rule on an objection to the question, on the record and out of hearing of the jury. He may rule that the question is or is not proper to be asked. He may ask it himself or permit one of the attorneys to ask it. The juror may be told to wait until the testimony is concluded, and if then his question remains unanswered may submit his request in writing to the court. If the trial judge determines that it is relevant, competent and material, he should arrange for its presentation. By tactful handling, the trial judge should be able to discourage questions from jurors. The

hazards of an irretrievable and harmful error from a promiscuous and unexpurgated question by a juror far outweigh the disadvantages that may rise from an unanswered inquiry.

In dealing with a juror's questioning of witnesses, the trial judge should be especially alert to avoid the possibility of prejudice. It is the safer practice to require a juror to reduce his proposed question to writing. Thereupon, the judge may consult with counsel, if such be desired, and determine whether the question is proper.

Prejudice can arise from the simple oral asking of a question by a juror. For example, a juror might inquire, "Is it true that you beat your wife last week?"

If a juror should unexpectedly blurt out an improper question, the trial judge should, of his own volition, stop the interrogation without requiring counsel for the aggrieved litigant to object and thereby risk the possibility of incurring the animosity of the juror seeking information. The judge should then consider the advisability of giving a curative instruction.

The dangers incident to jury interrogations are substantial. The benefits are often inconsequential. However, inasmuch as the jurors are, in the last analysis, the judges of the facts, we decline to hold that it is always error for a juror to ask a question of a witness. In the Indiana case of *Carter v. State,* 250 Ind. 13, 234 N. E. (2d) 650, 31 A. L. R. (3d) 868 (1968), the judge, at the commencement of the trial, stated, "During the progress of the trial, none of you, as jurors, are permitted to ask questions of any of the witnesses, the parties or their attorneys. . . ." Upon conviction, the defendant submitted that the trial judge erred in ruling preliminarily that no questions might be asked. The Supreme Court of Indiana agreed, holding that it was improper to forbid questions by preliminary instruction. The essence of the ruling was that it is a matter of discretion for the trial judge. The Indiana Court said, "The practice of permitting jurors to propound questions should not be encouraged by the Trial Court, but it should not be forbidden by preliminary instruction."

Proper questions create no problems, but a juror has no more right to ask an immaterial, incompetent or irrelevant

question than has counsel. The trial judge should meticulously endeavor to make it unnecessary for offended counsel to interpose an objection to a juror's question in his presence.

We now *ex mero motu* address a matter not raised by the appeal. Rule 4 of this Court requires counsel for both the appellant and the respondent to certify that all irrelevant matter has been deleted from the transcript of record submitted to the Court. The duty imposed is upon counsel for both the appellant and the respondent. In the recent case of *State v. Harris*, filed May 24, 1982, we said:

> Both attorneys signed the certificate of relevance demanded by Rule 4. The certificate of relevance is the attorneys' personal assurance to the Supreme Court that the record complies with Rule 4. We admonish the attorneys to make certain any future record complies with Rule 4 before they certify the relevance of all it holds.
>
> The Court expects this opinion will awaken appellate lawyers to their office and duty of presenting only relevant matter in the transcript of record. If that purpose fails, however, the Court reserves the right to impose sanctions, including an order that the offending lawyer pay the cost of reproducing the irrelevant material.

The transcript of record before us is composed of 164 pages, nine of which are devoted to a printing of the judge's charge, about which no objection has been raised. There was no reason for the printing of all of the testimony and certainly the charge was irrelevant. Some thirty to forty pages should have been more than sufficient to set forth the motions and the ruling thereon and to set forth that part of the trial which involved jurors' questioning of witnesses. With it in view to eliminate unnecessary printing, the advisability of stipulations should be considered. In this day of expensive litigation, it is important that the printing of surplusage be eliminated. In addition, the members of this Court should be spared the reading of those portions of a transcript unnecessary to a determination of the issues submitted on the appeal. Inasmuch as the transcript in this case was prepared long before *Harris, supra*, no sanction will be imposed.

Affirmed.