STATE OF NEBRASKA, APPELLEE, V. WAYNE E. ZIMA, APPELLANT.
468 N.W.2d 377

Filed April 25, 1991.   No. 90-038.

Kent F. Jacobs, of Blevens & Jacobs, for appellant.

Robert M. Spire, Attorney General, and Wynn Clemmer for appellee.

Hastings, C.J., White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ., and Colwell, D.J., Retired.

Caporale, J.

Pursuant to findings of the county court jury, defendant-appellant, Wayne E. Zima, was adjudged guilty of failing to signal a turn, in violation of Neb. Rev. Stat. § 39-652 (Reissue 1988), and of first-offense driving while intoxicated, in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1988). This judgment was affirmed by the district court. In his appeal to this court, Zima assigns as error the district court's failure to find the county court erred on the record by permitting jurors to question witnesses, claiming this exercise deprived him of a fair and impartial jury and trial. For the reasons set forth hereinafter, we disapprove the practice of permitting jurors to question witnesses, but nonetheless affirm the judgment of the district court.

On the evening of October 18, 1988, Zima was stopped by a Seward County deputy sheriff for failing to signal his left turn from Centennial Avenue onto Highway 34 in Utica, Seward County, Nebraska. Upon reaching Zima's vehicle, the deputy noted an odor of alcohol emanating from within and the bloodshot condition of Zima's eyes. In addition, Zima was unsteady as he, upon request, walked to the deputy's patrol vehicle. Zima also had difficulty with several field sobriety tests administered by the deputy, and the deputy concluded that Zima was intoxicated, an opinion corroborated by the results of a preliminary and a subsequent, more sophisticated, breath test.

During trial, after the parties completed their questioning of witnesses, the county court judge invited the jurors to ask questions. Zima complains of the following colloquy, which occurred at the conclusion of the parties' examination of the State's breath testing device witness:

[JUROR]: Well now if the breath test simulator doesn't work, then what test do you use on . . . .

THE WITNESS: If I have a problem with the breath simulator, then I notify the Department of Highway Safety and then they submit another one to me and then I do my checks according to what he has sent me.

[JUROR]: To your knowledge, has there ever been a time when that one at the county jail hasn't worked?

THE WITNESS: Not to my knowledge.

[JUROR]: To mine there was.

THE COURT: Now wait a minute.

THE WITNESS: This is the breath simulator. This is the breath simulator. This is not the intoxilyzer or the gas chromatograph. We had a gas chromatograph at one time - - -

[JUROR]: There's more than one - - -

THE WITNESS: Yes, ma'am.

[JUROR]: - - - machine that they run it on, that you've tried?

THE WITNESS: Yes, ma'am. We had the gas chromatograph at one time, and we put that instrument out of operation and sent it back to the state because we were — we heard about the intoxilyzer 4011AS. And we've never had any problems with it, ever.

[JUROR]: Okay. So more than — so they use more than one breath simulator type like that — one machine?

THE WITNESS: Right, yes. Before I was the jail administrator, they used the gas chromatograph instrument over at the Seward County Detention Center. And since that period when I have become the administrator, we have put in the intoxilyzer 4011AS.

[JUROR]: Now, I don't know, can I ask — I don't know if it will pertain to him or not. If — like say if you was [sic] giving me the test and I objected to that test, what

test would you do then?

THE WITNESS: Okay, the officer is the person that you'd have to talk to, the individual officer. He has the option — if there is something wrong, if it were to present itself that something were wrong, then I would put the machine out of service. I would advise the officer that there was a problem. Then it would be up to him whether or not he would go blood or urine. And then those tests would be taken to Lincoln and subjected to the Department of Health Laboratories.

[JUROR]: Okay. Thank you.

Because of the foregoing colloquy, the State, which now urges that no error occurred because of juror questioning, moved the county court judge for a mistrial. Zima, however, resisted the State's motion, stating, through counsel, "I just don't think there's sufficient grounds for a mistrial." Apparently persuaded by Zima's analysis, the county court overruled the State's motion.

Although the issue of juror questioning of witnesses is one of first impression in Nebraska, it is not without precedent. One group of jurisdictions, although it may discourage juror questioning of witnesses, holds that allowing the practice is within the discretion of the trial court. See, e.g., *U.S. v. Johnson*, 914 F.2d 136 (8th Cir. 1990); *U.S. v. Lewin*, 900 F.2d 145 (8th Cir. 1990); *State v. Johnson*, 784 P.2d 1135 (Utah 1989); *People v Heard*, 388 Mich. 182, 200 N.W.2d 73 (1972); *People v Wesley*, 148 Mich. App. 758, 384 N.W.2d 783 (1985), *aff'd* 428 Mich. 708, 411 N.W.2d 159 (1987), *cert. denied* 484 U.S. 967, 108 S. Ct. 459, 98 L. Ed. 2d 399; *Carter v. State*, 250 Ind. 13, 234 N.E.2d 650 (1968); *Lucas v. State*, 381 So. 2d 140 (Miss. 1980).

Another group of jurisdictions outlines a procedure for allowing jurors to submit written questions to the court, subject to review by the court and counsel. See, e.g., *People v. McAlister*, 167 Cal. App. 3d 633, 213 Cal. Rptr. 271 (1985); *State v. LeMaster*, 137 Ariz. 159, 669 P.2d 592 (1983); *State v. G. Barrett*, 278 S.C. 414, 297 S.E.2d 794 (1982); *Rudolph v. Iowa Methodist Medical Ctr.*, 293 N.W.2d 550 (Iowa 1980); *People v. Gates*, 97 Cal. App. 3d Supp. 10, 158 Cal. Rptr. 759

(1979). See, also, Urbom, *Toward Better Treatment of Jurors by Judges*, 61 Neb. L. Rev. 409 (1982).

Although the techniques employed by the second group of jurisdictions (1) minimize the likelihood of debacles such as that in this case, (2) may obviate the concern which would otherwise face counsel who fear that raising an objection would alienate the questioning juror, and, (3) to a lesser extent, address as well the question of juror qualification to examine witnesses, they do not deal with the more fundamental question of what effect juror questioning may have, or appear to have, on juror impartiality. Since due process requires a fair trial before a fair and impartial jury, *Simants v. State*, 202 Neb. 828, 277 N.W.2d 217 (1979), the judicial process is better served by the time-honored practice of counsel eliciting evidence which is heard, evaluated, and acted upon by jurors who have no investment in obtaining answers to questions they have posed. See *Pacific Improvement Co. v. Weidenfeld*, 277 F. 224 (2d Cir. 1921). But see *United States v. Witt*, 215 F.2d 580 (1954) (without referring to *Pacific Improvement Co.*, holds juror questioning within discretion of trial judge).

Our system is an adversary one which depends upon counsel to put before lay fact finders that which should be admitted in accordance with the rules of evidence and to keep from them that which should not be received in evidence. A change in this system whereby jurors become advocates and possible antagonists of the witnesses does not on its face suggest a fairer or more reliable truth-seeking procedure. We therefore rule that in the trial courts of this state, juror questioning of witnesses is prohibited.

However, the foregoing declaration does not end our analysis of this case, for we have held that a party cannot silently tolerate error, gamble on a favorable result, and then complain that he or she guessed wrong. See *State v. Jenson*, 232 Neb. 403, 440 N.W.2d 686 (1989). Indeed, Zima did more than remain silent, he successfully argued against a mistrial and thereby invited the very error which is the source of his present discontent. It is a well-established principle of appellate practice that a party cannot complain of error which he or she invited the trial court to commit. *State v. Ditter*, 232 Neb. 600, 441

N.W.2d 622 (1989). Zima thus cannot now complain that the outcome achieved is not the result he desired.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

Since the procedure, or more accurately, the lack of procedure, for a juror's questions of a witness in Zima's trial approached an interrogational free-for-all, there is a basis for the majority's criticism. However, if the objective of a trial, particularly a jury's factfinding role in the judicial process, is ascertaining truth, or at least probable truth, for resolution of disputed claims or contradictory contentions and positions of litigants, an absolutely prohibitive rule against all questions from jurors is as incomprehensible as it is imprudent.

Allowing a juror's question to a witness is related to two of the Nebraska Evidence Rules, namely, Rule 611(1), which provides in part, "The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth," and Rule 614(2), "The judge may interrogate witnesses, whether called by himself or by a party."

A review of decisions in other jurisdictions supplies cogent reasons for allowing a juror's questions to a witness; for example:

> [A] well informed juror serves the cause of justice. In some cases it is important to clarify a problem in a juror's mind. It may sometimes be necessary for a juror to call an important matter to the attention of court and counsel. We therefore think it is important for the trial judge to control direct questions to the witnesses by members of the jury, but we also believe jurors should be afforded the opportunity to direct any questions or problems they may have to the court.

*State v. Taylor*, 25 Ariz. App. 497, 500, 544 P.2d 714, 717 (1976).

> There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses. If a juror is unclear as to a point in the proof, it

> makes good common sense to allow a question to be asked about it. If nothing else, the question should alert trial counsel that a particular factual issue may need more extensive development. Trials exist to develop truth. It may sometimes be that counsel are so familiar with a case that they fail to see problems that would naturally bother a juror who is presented with the facts for the first time.

*United States v. Callahan*, 588 F.2d 1078, 1086 (5th Cir. 1979).

"As finders of fact, jurors should receive reasonable help in resolving legitimate questions which trouble them but have not been answered through [counsel's] interrogation of witnesses . . . ." *Rudolph v. Iowa Methodist Medical Ctr.*, 293 N.W.2d 550, 556 (Iowa 1980).

"[T]he interests of justice demand that jurors be well-informed with an opportunity to clarify matters they either did not hear or did not comprehend." *State v. LeMaster*, 137 Ariz. 159, 165, 669 P.2d 592, 598 (1983).

> [I]t [is] proper that a juror may ask an occasional question where something has been said by a witness which is confusing to the juror for the purpose of clarifying the matter. The extent to which the trial court may allow such questioning by the juror is a matter in the discretion of the court.

*Krause v. State*, 75 Okla. Crim. 381, 386, 132 P.2d 179, 182 (1942).

"The basic reason underlying [a juror's asking questions of a witness] is that the jurors are the finders of fact and any questions they may ask may help them in reaching their ultimate determination." *People v Heard*, 388 Mich. 182, 187, 200 N.W.2d 73, 76 (1972).

"Law is not an exact science . . . . Despite the majesty and gravity with which its administration is properly invested, it is a very human affair after all. It has to do not with scientific axioms or scientific formulae, but with the everyday concerns of ordinary citizens." H. MacMillan, *The Ethics of Advocacy*, in Law & Other Things 171, 174 (1971).

In its opinion, the majority has mentioned decisions from other jurisdictions, including appellate decisions from eight states and one federal circuit court, which permit a juror's

question to a witness. To be added to the decisions mentioned by the majority are the following 14 decisions from state appellate courts and 5 decisions of federal circuit courts, all allowing juror questions to a witness in some manner: *Ratton v. Busby*, 230 Ark. 667, 326 S.W.2d 889 (1959); *Ferrara v. State*, 101 So. 2d 797 (Fla. 1958); *Story v. State*, 157 Ga. App. 490, 278 S.E.2d 97 (1981); *Stamp v. Commonwealth*, 200 Ky. 133, 253 S.W. 242 (1923); *State v. Crawford*, 96 Minn. 95, 104 N.W. 822 (1905); *Sparks v. Daniels*, 343 S.W.2d 661 (Mo. App. 1961); *State v. Rodriguez*, 107 N.M. 611, 762 P.2d 898 (1988); *Sitrin Bros. v. Deluxe Lines*, 35 Misc. 2d 1041, 231 N.Y.S.2d 943 (1962); *State v. Howard*, 320 N.C. 718, 360 S.E.2d 790 (1987); *State v. Sheppard*, 100 Ohio App. 345, 128 N.E.2d 471 (1955); *Krause v. State, supra*; *Reese v. Pittsburgh*, 313 Pa. 32, 169 A. 366 (1933); *Byrge v. State*, 575 S.W.2d 292 (Tenn. Crim. App. 1978); *Green v. Rudsenske*, 320 S.W.2d 228 (Tex. Civ. App. 1959); *U.S. v. Nivica*, 887 F.2d 1110 (1st Cir. 1989); *United States v. Witt*, 215 F.2d 580 (2d Cir. 1954); *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512 (4th Cir. 1985); *United States v. Callahan, supra*; *United States v. Gonzales*, 424 F.2d 1055 (9th Cir. 1970).

Consequently, research on the point indicates that there are decisions from 22 state courts and 6 federal circuit courts which allow the practice of a juror's question to a witness. It appears that, with the exception of Nebraska, as reflected by today's decision, no appellate court, state or federal, has rejected the practice of juror questions in all circumstances and imposed an entire embargo on that practice. Although good sometimes comes from marching to the beat of a different drummer, the majority's drumbeat is drowned out by the band of courts in other jurisdictions which allow the practice of juror questions to a witness.

From the decisions in those jurisdictions allowing juror questions to a witness, there evolve a practical procedure and guidelines which reduce prospects for a mistrial, new trial, or reversal based on such questions to a witness. At the outset, a trial court must consider whether juror questions to any witness will assist the jury in its role as fact finder. A decision to allow or reject questioning from a jury is within the trial court's

discretion. If the court decides to allow questions from the jury, then before any testimony the court must inform the jury that if a juror has a question for clarification of a witness' testimony, the juror's written question shall be presented to the court, which determines whether the judge, and only the judge, will ask the witness a question submitted by a juror. After a witness testifies, a jury would have to be given suitable time to formulate questions in reference to the testimony given, but must be instructed that any question is a juror's independent decision, to be made without discussing the content of the question with any other member of the jury. The juror's written question would then be given to the bailiff for delivery to the judge. The court and counsel must examine the submitted question or questions with an opportunity, on the record but out of the jury's hearing, for counsel's objection to any question. If the court rules that the submitted question or questions will result in inadmissible testimony, the judge shall inform the jury that the court declines to interrogate the witness through use of the jury-submitted questions. However, if a submitted question will elicit admissible testimony, and after the judge has asked the jury-submitted question, counsel shall have the opportunity to interrogate the witness on the subject raised by the juror's question and the witness' answer. In this manner, the court may scrupulously control interrogation of a witness. See, *State v. G. Barrett*, 278 S.C. 414, 297 S.E.2d 794 (1982); *Rudolph v. Iowa Methodist Medical Ctr.*, 293 N.W.2d 550 (Iowa 1980); *United States v. Callahan*, 588 F.2d 1078 (5th Cir. 1979); *State v. LeMaster*, 137 Ariz. 159, 669 P.2d 592 (1983); *Story v. State*, 157 Ga. App. 490, 278 S.E.2d 97 (1981); *People v. Gates*, 97 Cal. App. 3d Supp. 10, 158 Cal. Rptr. 759 (1979); *State v. Taylor*, 25 Ariz. App. 497, 544 P.2d 714 (1976).

Inherent in a categorical condemnation of the practice which allows a juror's question to a witness is a skepticism concerning every trial judge's capability to manage interrogation and a suspicion about a jury's analytical and deductive capacities.

It is a myth that only courts and counsel possess a map for the journey toward truth in a trial. The blindfold on Justice is not a gag. Hence, a juror's question to a witness, in accordance with the procedure and guidelines suggested, should be a part of Nebraska practice.