IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


STATE V. POCHOP


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL J. POCHOP, APPELLANT.


Filed January 29, 2019.    No. A-17-1199.


Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Justin J. Cook, of Lincoln Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.


MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Michael J. Pochop appeals his conviction for subsequent offense violation of a protection order. He contends that the district court erred in allowing testimony regarding prior bad acts or failing to give a limiting instruction to the jury, in allowing certain testimony despite discovery violations by the State, and failing to properly instruct the jury. Having considered Pochop's claims and finding no error, we affirm.

### STATEMENT OF FACTS

In June 2017, the State charged Pochop with subsequent offense violation of a protection order, a Class IV felony. See Neb. Rev. Stat. § 42-924(4) (Reissue 2016). The charge related to a February 9 text message conversation between Pochop and his wife, Odett, during a period of time when they were separated and Odett had a domestic abuse protection order against Pochop. Specifically, during that text message exchange, which started as a conversation about their

- 1 -

children, Pochop ended the exchange by texting Odett, "You're such a piece of shit." Following that text, Odett called the police which led to Pochop's arrest.

PRETRIAL MOTIONS

Prior to trial, Pochop filed a motion for discovery. The court granted Pochop's, and the State's, discovery motions but only as to the production of things "to [the] extent allowed by statute."

Pochop also filed a motion in limine "barring the State from introducing evidence or testimony of other conversations, interactions or communications directly or indirectly involving the Defendant that are not specifically related to the incident giving rise to the charges in the Information filed herein." The hearing on Pochop's motion took place on the morning that the jury trial was scheduled to begin. The State argued that the evidence it sought to adduce fell under an exception to rule 404 because it was intrinsically intertwined with the text message for which Pochop was charged. During the hearing, Odett testified that Pochop had called her previously and said he "couldn't wait until I was dead, and that he was going to have the kids pee on my grave or spit on my grave." Odett also testified regarding Facebook posts made by Pochop including a picture of the back of her house and posts about her being a drug user and a bad mother. On cross-examination, Odett testified that she had previously reported the prior communications to law enforcement. The trial court overruled Pochop's motion holding that the State would be allowed to present Odett's testimony for the purpose "of intent, preparation and plan." At the close of the 404 hearing, the State emailed to Pochop's counsel the police reports which corroborated that Odett did report the prior communications by Pochop.

DISCOVERY ISSUE

The trial began immediately after the 404 hearing concluded. When the trial recessed for lunch, Pochop filed a motion seeking to exclude "evidence or testimony contained within [the police reports]" because the State did not disclose the police reports to the defense until after the 404 hearing in violation of discovery rules. See Neb. Rev. Stat. § 29-1919(3) (Reissue 2016). During a hearing on this motion, Pochop argued to the court that he had waived a preliminary hearing in exchange for all police reports and that, by withholding the information, the State had violated that agreement.

The prosecutor stated that one of the police reports related to Facebook posts by Pochop and the other related to the phone call where Pochop allegedly said "I can't wait until you're dead." The prosecutor said she learned of the reports on the previous Thursday, September 7, 2017, and informed defense counsel that same day that she intended to offer evidence of prior contacts between Odett and Pochop. The following day, Friday, Pochop's attorney called the prosecutor who advised Pochop's attorney regarding the contents of the reports. The following Monday, following the pretrial hearing, the prosecutor sent the reports to Pochop's attorney. The court found that there had been no discovery violation.

EVIDENCE AT TRIAL

Pochop and Odett married in 2012, had two children, and separated in early 2016. In March 2016, Odett obtained an ex parte domestic abuse protection order against Pochop from the Adams

County Court. As relevant here, the protection order "enjoined and prohibited" Pochop from (1) "threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of [Odett]; and (2) "telephoning, contacting, or otherwise communicating with [Odett]." This order was modified by the Adams County Court on April 4, following a hearing at which both Pochop and Odett were present. As relevant here, the modified protection order retained the aforementioned provisions but modified subsection (2) to permit Pochop to contact Odett by phone twice per week in order to arrange visitation with the parties' children. The order was to remain in effect for one year from March 22, 2016, which was the initial issuance date of the protection order. In October, as part of dissolution proceedings between Odett and Pochop, the Lancaster County District Court entered a temporary custody order which provided in relevant part:

> That the Court specifically finds that reasonable contact between the parties for purposes of parenting time exchanges and exchange of information regarding the minor children shall not violate the Protection Order in favor of [Odett], and against [Pochop]. . . . This shall include text messages exchanged for the limited purpose of discussing the minor children.

Odett testified that, on the evening of February 9, 2017, while the domestic abuse protection order was still in place, Pochop contacted her by text message. A short text message conversation regarding one of the parties' children took place which was reflected in its entirety in exhibit 3. At the end of that text conversation, Pochop told Odett "[y]ou're such a piece of shit." Odett testified that she called police because she had "been dealing with stuff like that for over a year," with Pochop "saying mean things about me and posting mean things about me" on Facebook. She also testified that Pochop would post that she was a bad mom, a drug addict, and that she had "taken the kids and [run] off with them, that he had posted a photo of the back of her house, and that he had a conversation where he had said that "he couldn't wait 'til I was dead . . . and that he couldn't wait to have the boys spit on my grave or pee on my grave."

JURY INSTRUCTIONS, VERDICT, AND SENTENCING

During the jury instruction conference, Pochop requested a limiting instruction on Odett's prior bad acts testimony in conformity with the court's prior ruling that the testimony could be used only as evidence of Pochop's intent, preparation, and plan. However, the district court reconsidered its prior ruling and determined that Odett testified to "a pattern of events or a cumulative effect of events, culminating in [Pochop's text that led her to call the police]" and, therefore, the other instances of contact described in her testimony were inextricably intertwined with the charged offense. The court further noted that the evidence formed "the factual setting for the crime," the "evidence was necessary to provide context" and "was necessary for the prosecution to present a coherent picture of the charged crime."

Further, Pochop's attorney argued that the jury should be instructed as to the effect of the Lancaster County District Court's temporary custody order which purported to modify the domestic abuse protection order. The State argued that the jury instructions did not need to be modified because there was no "statute or law that require[d] the temporary order to be part of the material elements in this case. . . . . [T]he defense can argue that under element number three,

knowingly violated the order of protection." In the alternative, Pochop suggested that the court list the temporary order "under the knowingly violated the order of protection [portion of the jury instructions] . . . That's what I suggest. Then we do a separate jury instruction that has them take that into consideration as to the element of knowing." The court denied Prokop's requests stating "Well, I don't think [Prokop]'s charged with violating the temporary order. So, I'm going to overrule the objection and give Instruction No. 3 as it is."

The jury found Pochop guilty and the court sentenced him to 12 months' imprisonment and 12 months' postrelease supervision. The sentence was ordered to run consecutively to any other sentence being served by Pochop and he was given credit for 5 days previously served. Pochop has timely appealed to this court and is represented on appeal by the same counsel that represented him at trial and sentencing.

## ASSIGNMENTS OF ERROR

Pochop's assignments of error, consolidated and restated, are that the district court abused its discretion by: (1) failing to exclude Odett's testimony governing Pochop's prior communications with her due to the State's discovery violation; (2) allowing Odett to testify to Pochop's prior communications as "bad acts" testimony or, in the alternative, failing to grant a limiting instruction on Odett's "bad acts" testimony; and (3) failing to include a jury instruction governing the effect of the Lancaster County District Court's order on the Adams County protection order.

## STANDARD OF REVIEW

Discovery in a criminal case is generally controlled by either a statute or court rule. *State v. Russell,* 292 Neb. 501, 874 N.W.2d 8 (2016). Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal absent an abuse of discretion. *Id.*

Whether evidence is admissible for any proper purpose under the rule governing admissibility of evidence of other crimes, wrongs, or acts rests within the discretion of the trial court. *State v. Oldson,* 293 Neb. 718, 884 N.W.2d 10 (2016). It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under the balancing rule and the other acts rule, and the trial court's decision will not be reversed absent an abuse of discretion. *Id.*

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Mueller,* 301 Neb. 778, 920 N.W.2d 424 (2018).

## ANALYSIS

### DISCOVERY VIOLATION

Pochop contends that the district court abused its discretion by failing to exclude Odett's testimony about Pochop's improper prior communications involving Odett due to discovery violations by the State. He argues that "the State had access to the information and reports but failed to provide the same to the Appellant and constituted a surprise and [a] due process violation." Brief for appellant at 5. In support of his claim, Pochop relies on Neb. Rev. Stat.

§ 29-1919 (Reissue 2016), which provides that if a party fails to comply with the provisions of Nebraska's discovery statutes found at Neb. Rev. Stat. §§ 29-1912 to 29-1921 (Reissue 2016), or an order issued pursuant to those sections, the court can prohibit the party from introducing into evidence the material not disclosed or enter such other order as it deems just under the circumstances.

Here, the record reflects that, prior to trial, the court granted the parties' discovery motions "to [the] extent allowed by statute." Section 29-1912(1) provides:

(1) When a defendant is charged with a felony or when a defendant is charged with a misdemeanor or a violation of a city or village ordinance for which imprisonment is a possible penalty, he or she may request the court where the case is to be tried, at any time after the filing of the indictment, information, or complaint, to order the prosecuting attorney to permit the defendant to inspect and copy or photograph:

(a) The defendant's statement, if any. For purposes of this subdivision, statement means a written statement made by the defendant and signed or otherwise adopted or approved by him or her, or a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the defendant to an agent of the prosecution, state, or political subdivision thereof, and recorded contemporaneously with the making of such oral statement;

(b) The defendant's prior criminal record, if any;

(c) The defendant's recorded testimony before a grand jury;

(d) The names and addresses of witnesses on whose evidence the charge is based;

(e) The results and reports of physical or mental examinations, and of scientific tests, or experiments made in connection with the particular case, or copies thereof;

(f) Documents, papers, books, accounts, letters, photographs, objects, or other tangible things of whatsoever kind or nature which could be used as evidence by the prosecuting authority;

(g) The known criminal history of a jailhouse witness;

(h) Any deal, promise, inducement, or benefit that the prosecuting attorney or any person acting on behalf of the prosecuting attorney has knowingly made or may make in the future to the jailhouse witness;

(i) The specific statements allegedly made by the defendant against whom the jailhouse witness will testify and the time, place, and manner of the defendant's disclosures;

(j) The case name and jurisdiction of any criminal cases known to the prosecuting attorney in which a jailhouse witness testified about statements made by another criminal defendant that were disclosed to the jailhouse witness while he or she was a jailhouse witness and whether the jailhouse witness received any deal, promise, inducement, or benefit in exchange for or subsequent to such testimony; and

(k) Any occasion known to the prosecuting attorney in which the jailhouse witness recanted testimony about statements made by another criminal defendant that were disclosed to the jailhouse witness while he or she was a jailhouse witness and, if any are known, a transcript or copy of such recantation.

Pursuant to § 29-1912, there is no specific requirement that the State turn over police reports. Nor does Pochop cite to a specific category in § 29-1912 which might relate to information in the police reports thereby bringing that information within the ambit of the statute. Assuming, without deciding, that the police reports did contain some information that was subject to § 29-1912, thereby subjecting its production to the court's discovery order, we must determine whether the court erred in failing to grant Pochop's motion to exclude portions of Odett's testimony due to the late disclosure of the police reports. We find no such error.

Here, Pochop is not arguing that the State failed to produce the police reports. He is arguing that the State was late in producing them. But, as the Nebraska Supreme Court has noted:

But there is a critical distinction between [*Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *State v. Castor,* 257 Neb. 572, 599 N.W.2d 201 (1999),] and the instant case, which is that in *Brady* and *Castor,* the prosecution failed to disclose exculpatory information until after the defendant in each case had been convicted. This is not such a case. Instead, the issue here is whether [the defendant] was prejudiced by the State's alleged failure to make a timely disclosure. Despite relying on *Brady* and *Castor,* [the defendant] concedes that he was eventually provided with the reports about which he is now complaining. The real question in this case is whether [the defendant] was irreparably harmed by the belated disclosure.

*State v. Gutierrez*, 272 Neb. 995, 1028, 726 N.W.2d 542, 571-72 (2007), *disapproved on other grounds, State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016), and *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

Like in *Gutierrez*, Pochop does not explain how he was prejudiced by the State's belated disclosure of the police reports which demonstrated Odett actually did report Pochop's alleged prior violations of the protection order to police. Pochop, in the most general of terms, simply argues that the late disclosure of the police reports amounted to unfair surprise and that he was unable to question Odett about the subject matter prior to trial. But the existence of the reports, their subject matter, and the State's intent to use the material was disclosed immediately upon their discovery. After the State disclosed the subject matter, and later, the police reports themselves, Pochop's counsel, who has now alleged prejudice and unfair surprise due to its late disclosure, did not move for a continuance. In short, Pochop has failed to explain how the disclosure of this specific information prejudiced him and Pochop failed to move for a continuance if he believed additional time was required in order to prepare for trial following its late production. *State v. Zima*, 237 Neb. 952, 468 N.W.2d 377 (1991) (party cannot silently tolerate error, gamble on favorable result, and then complain that he or she guessed wrong). We hold that the court did not abuse its discretion in overruling Pochop's motion to exclude portions of Odett's testimony due to the belated production of the police reports.

PRIOR BAD ACTS

Pochop next contends that the district court erred in allowing Odett to testify regarding prior bad acts when "there was no exception to rule 404 regarding the subject testimony" and that the court erred in failing to grant a limiting instruction related to this testimony. Brief for appellant at 2.

Neb. Rev. Stat. § 27-404(2) (Reissue 2016) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Although Rule 404 prohibits bad act or character evidence to demonstrate the actor was acting in conformity therewith, "under our decisional law, rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime." *State v. Castellanos*, 26 Neb. App. 310, 324, 918 N.W.2d 345, 357 (2018). "Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime." *State v. Parnell*, 294 Neb. 551, 574, 883 N.W.2d 652, 670 (2016).

In *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015), the Nebraska Supreme Court considered whether evidence of the injuries sustained by an infant during the seven weeks while the defendant cared for him were admissible in the defendant's trial for intentional child abuse resulting in death. The court concluded that the infant's injuries, which occurred prior to the date of his fatal injuries,

were inextricably intertwined with the charged crime and that, therefore, rule 404(2) does not apply. The incidents were not used for impermissible propensity purposes, but, rather, they formed the factual setting, and they were necessary to present a coherent picture of the crime. Furthermore, the frequency and the increasing severity of [the infant]'s injuries tended to prove that his fatal injuries resulted from [the defendant]'s intentional actions, rather than negligence.

*State v. Cullen*, 292 Neb. at 52, 870 N.W.2d at 801. Moreover, the court noted that the injuries were part of an escalating pattern of abuse that ended in the infant's death. *Id*.

Here, Odett's testimony regarding Pochop's acts during the time that the protection order was in place involved the same defendant and the same victim and was necessary to paint a coherent picture for the jury of the escalating pattern of Pochop's violating the protection order culminating in the text message of February 9, 2017. Without the full picture of Pochop's acts, the jury was left with the isolated February 9 incident of Pochop texting Odett "You're such a piece of shit" with no context within which to place that text. Thus, because Odett's testimony regarding Pochop's earlier acts was necessary to present a coherent picture of the offense to the jury, the district court did not err in admitting this evidence and determining that no limiting instruction was necessary.

JURY INSTRUCTION RE TEMPORARY CUSTODY ORDER

Finally, Pochop contends that the district court erred in failing to instruct the jury regarding the effect of the Lancaster County District Court's temporary custody order on the terms of the Adams County protection order.

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *State v. Castellanos, supra*.

From our review of the jury instruction conference, it does not appear that Prokop provided a proposed jury instruction to the court and there are no jury instructions included in the record on appeal. Because Pochop has failed to provide a tendered instruction or the actual instructions given at trial, it is impossible for this court to determine how the jury was instructed here and whether an additional, or different, instruction was warranted. See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015) (appellant's failure to include proposed jury instruction in record on appeal precluded appellate determination of whether tendered instruction was correct statement of law and was warranted by evidence). Consequently, this assigned error is without merit.

## CONCLUSION

Having considered and rejected all of Pochop's assigned errors, his conviction and sentence is affirmed.

AFFIRMED.